**HEAD & GUILD EQUIPMENT COMPANY, Inc., Appellant,**

v.

**C. M. BOND, Appellee.**

**No. 7259.**

Court of Civil Appeals of Texas, Beaumont.

Aug. 26, 1971.

Rehearing Denied Sept. 16, 1971.

Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellant.

Bobby C. Williams, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action for damages for breach of express warranties in the sale of a used dragline. Trial was by jury and plaintiff, C. M. Bond, recovered judgment against defendant, Head & Guild Equipment Company, Inc., upon the verdict. The parties will be referred to here as they were in the trial court.

The oral express warranties found by the jury were: That the bushings on the drums of the dragline had been reworked; that the dragline, when properly equipped with fairlead, was ready to dig dirt; that the dragline was a one-quarter yard machine when equipped with the one-quarter yard bucket; that the head of the motor in question was not cracked; that defendant had been through the whole dragline in question. The jury found that each of the representations was false, and that plaintiff had relied upon each of them. The jury also found the reasonable market value of the dragline when delivered to plaintiff to be $8,500.00; the reasonable amount of cash to compensate plaintiff for the cost of repairs to place the dragline in the condition represented, to be $4,361.00; that plaintiff's lost profits were $6,284.75; that plaintiff owed defendant $1,476.83. Judgment was rendered for plaintiff for $9,168.92. To arrive at that amount, the court added $4,-361.00 (the cost of repairs) to $6,284.75 (loss of profit), less $1,476.83 (amount plaintiff owed).

Defendant's first series of points attack the jury finding as to loss of profits. It is urged by defendant that plaintiff cannot recover these consequential damages because this was not a matter within the contemplation of the parties at the time of this transaction. Defendant also contends there was no evidence and insufficient evidence to support this finding by the jury, and that such finding is contrary to the great weight and preponderance of the evidence. We look only to the favorable evidence in passing upon the "no evidence" point, and to the entire record in passing upon the "insufficiency of the evidence" and "great weight and preponderance of the evidence" points. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Both parties agree the rule governing the recovery of the damages sought in this special issue is correctly stated in McGuire v. Osage Oil Corporation, 55 S.W.2d 535, 537 (Tex.Com.App.1932, holding approved), as follows:

"It is also practically the universal rule of law in this country and in England that recovery can be had for damages or losses resulting from collateral contracts affected by the breach of the suit contract, but this is not permitted, unless the collateral contract was known to, or in contemplation of, the parties, at the time the suit contract was entered into."

The significant words in that opinion are "known to" and "or in contemplation of." We proceed to examine the statement of facts as to favorable evidence supporting such finding.

Plaintiff testified to the following: In March, 1966, he was in the contracting business, digging some holes at Kirbyville for a fish farm. The holes were "acre" ponds about 50 feet by 400 feet in size. He was digging these ponds for the First Fish-Fur Farm. He began digging about the first of February, 1966, with an Insley dragline, but wanted some equipment that would dig faster. A. G. Mott told him defendant had some big draglines, and they went to Houston along in March. He had known Mott, one of defendant's employees, some twenty years. In Houston, he met Mr. Otting (defendant's vice-president at the time), and was shown some draglines. He told them he wanted a dragline to dig the fish ponds, which he described in detail. They agreed on the sales price and the dragline was delivered to him in a day or two. He did not have a contract to do so many holes.

R. L. Moses testified to the following: He is the manager of Drilco Foundation Company. He accompanied plaintiff and A. G. Mott to Houston to look at draglines in March, 1966. Mott was defendant's branch manager in Nederland at the time. He heard plaintiff tell the people at Head and Guild that he was planning to dig some fish ponds and needed some machinery to dig dirt.

R. O. Stringer testified to the following: He was involved in the business known as First Fish-Fur Farm, Incorporated. That corporation contracted with plaintiff to dig some ponds. His equipment broke down and someone else had to be employed to dig the last fifteen or sixteen.

Jack Route, Jr. testified to the following: He is vice-president of defendant corporation for machinery sales, and was sales manager at the time of this sale. He was the person responsible for making this sale and closing it. Plaintiff told him about the fish ponds and everything he was going to do. He knew what plaintiff was going to do with the machine. Plaintiff told him the fish ponds would be 50 feet wide.

A. G. Mott testified to the following: In 1966, he was defendant's manager of the Nederland branch. He learned that plaintiff was digging catfish ponds and talked with him about his need for a dragline.

He went to Houston with plaintiff when he bought the dragline in question.

In the case of Iowa Mfg. Co. v. Baldwin, 82 S.W.2d 994, at page 997 (Tex.Civ.App., Eastland, 1935, error dism.), it is said:

"It is the general rule that losses resulting from a collateral contract may not be regarded as arising out of breach of the contract upon which the action is founded. The basis for this rule is that such damages are not presumed, as a matter of law, to have been in the contemplation of the parties. But such damages are not condemned by law. If the contract upon which the suit is based was entered into for the purpose of enabling the complaining party to comply with a prior existing contract, or for the purpose of enabling him to enter into a future contract then contemplated by the parties, no just reason can be perceived for denying the recovery of such profits as an element of damages."

■ In deciding whether there is evidence to support the implied finding by the jury that this collateral contract was within the knowledge and contemplation of the parties, we view the evidence in its most favorable light in support of such finding. East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466 (Tex.Sup.1970). The testimony of Jack Route, Jr., defendant's sales manager at the time of the sale, that plaintiff told him about the fish ponds and everything he was going to dig, and the general statement that he knew what plaintiff was going to do with the machine, is an admission which constitutes support. The "no evidence" point is overruled.

■ However, we find there is insufficient evidence to support such finding. We have found few cases in the State of Texas in which recovery has been allowed for loss of profits under a collateral contract. In each instance the opinion of the appellate court makes it clear that the terms of the collateral contract were well known to the

parties. In San Antonio Paper Co. v. Morgan, 53 S.W.2d 651, 655 (Tex.Civ.App., Austin, 1932, error dism.), suit was brought to recover damages for loss of profits from a printing contract plaintiff had with the State of Texas, when defendant breached its contract with plaintiff to furnish the paper. The court in that opinion said:

" * * * appellant was informed that the loss of profits on the state contract would be the result of the breach of its own contract to furnish appellee the paper necessary to carry out his state contract."

Again, in Iowa Mfg. Co. v. Baldwin, supra, (82 S.W.2d p. 995) it is written:

"The evidence is conclusive that appellant knew the terms of the contract between the Baldwins and Stuckey, and that it sold the rock crushing outfit to the Baldwins for the known purpose of enabling them to perform same."

Looking to the entire record, in passing upon this point of error, it does not appear that either party set out to either prove or disprove this essential element upon which consequential damages had been sought. The "insufficient evidence" point is sustained.

■ ■ Defendant has a series of points of error attacking the jury finding as to the cost of repairs to place the dragline in the condition it was represented to be. As stated above, the jury found such repair cost to be $4,361.00. Defendant argues this is not the proper measure of damages, citing Texas Construction Rentals, Inc. v. Harrison, 410 S.W.2d 482 (Tex.Civ.App., Waco, 1966, error ref., n. r. e.). We agree. The measure of damages plaintiff is entitled to recover is the difference in the market value of the dragline in the condition in which it was delivered and its market value in the condition it should have been according to the contract of the parties. However, the jury found the reason-

able market value of this dragline when delivered, to be $8,500.00, which when deducted from the sales price of $12,861.00, leaves the precise sum the jury found to be the cost of repairs, that is, $4,361.00. There are no points of error attacking the jury finding as to the market value of the dragline in the condition in which it was delivered. No harm had been demonstrated to defendant. These points of error are overruled.
*Rule 434.*

The amount of the consequential damages, being found in a separate special issue, is a divisible award, and can be separated from that portion of the damages which has support in the evidence. We are therefore authorized to require a remittitur of the amount of damages assessed which lacks support in the record. Texas Employers' Ins. Ass'n v. White, 129 Tex. 659, 107 S.W.2d 360, 361 (1937).

Defendant has evidentiary points of error attacking each of the jury findings that the representations made were false. We examine the "no evidence" points and "insufficiency of the evidence" points and "great weight of the evidence" points by the rules above stated. There is evidence to support each finding, and such findings are not so contrary to the evidence as to be clearly wrong or manifestly unjust. These points are overruled.

Plaintiff has conceded the trial court judgment was incorrect in allowing interest to be recovered from the date of the jury verdict.

If, within ten (10) days, plaintiff will remit $6,284.75, the judgment will be reformed and affirmed to allow plaintiff a recovery of $4,361.00, less $1,476.83, or a net amount of $2,884.17, with interest from September 9, 1970, the date of the trial court judgment; otherwise, it will be reversed and remanded.

The judgment is affirmed, conditionally.