**In the Matter of the ESTATE OF Della MINNICK, Deceased.**

No. 9380.

Court of Appeals of Texas, Amarillo.

February 28, 1983.

Rehearing Denied April 19, 1983.

Tom Oliver, Vernon, for appellant.

Richard D. Bird, Bird & Bird, Childress, Calloway Huffaker, Tahoka, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This appeal is from a judgment ordering independent co-executors to partially distribute an estate and file a final accounting. By nine points of error, appellant Verris Chester Wardell challenges the trial court's power to order the distribution and accounting and complains of its failure to grant relief he sought. We reform and affirm.

Della Minnick died testate on April 3, 1971. She devised her estate to five daughters and a son and appointed two sons-in-law, Wardell and appellee Ray Shirley, as independent co-executors. The son and one daughter subsequently died, after their interests in the estate vested.

Wardell and Shirley agree that they qualified as independent co-executors, but disagree on almost everything else. Their primary dispute centers around Wardell's belief that Shirley and his wife, appellee Virginia Lee Shirley, improperly obtained substantial property from Mrs. Minnick, an accusation that the Shirleys have consistently denied.

Tiring of the lengthy dispute and Wardell's search for allegedly missing estate property, the Shirleys and appellee Rex Robinson, assignee of the deceased son's share of the estate, filed pleadings requesting, among other things, a final accounting and the partition, distribution and closing of the estate. Wardell responded with pleadings seeking property and records from the Shirleys and the removal of Ray Shirley as an executor. After a hearing, the trial court ordered a partial distribution of $600,000, the division and distribution (or sale by the sheriff) of various personal effects of the decedent and the filing of final accountings by the executors. The court refused other relief and reserved questions about the accountings and the executors' fees until the final accounts are filed.

The trial court also filed findings of fact and conclusions of law, finding, among other things, that the estate had been fully administered except for payment of executors' fees and court costs and that the estate should be partitioned and distributed. The trial court concluded that "Section 373 of the Texas Probate Code has been complied with by the Applicants, and an immediate partial distribution of said estate should be made."

By his nine points, Wardell contends the trial court erred (1) in ordering the partial distribution of $600,000, (2) in ordering the distribution or (3) the sale of other items of personal property, (4) in naming individuals entitled to receive the distributions, (5) in ordering the executors to file final accounts, (6) in failing to remove Shirley as executor or (7) in reinvesting Shirley with the powers of an executor, and in refusing to hear (8) Wardell's complaints against the Shirleys and (9) evidence concerning the estate's 1980 tax liability. We will dispose of the points in the order listed.

By his first point, Wardell challenges the trial court's power to order the independent executors to make a partial distribution of the estate assets. The estate contains over $700,000 in cash, derived primarily from the sale of realty that was devised in equal shares to Mrs. Minnick's five daughters and her son. The estate also contains various items of jewelry, furniture and other personal effects that were devised in equal shares to the five daughters. After hearing testimony on the contents and condition of the estate and admitting into evidence an interim accounting prepared by Wardell, the trial court ordered $600,000 distributed in equal shares to the four surviving daughters, the devisee of the deceased daughter and the assignee of the deceased son. The court also ordered the personal effects dis-

tributed, or sold by the sheriff and the proceeds distributed if a distribution in kind was not made.

As quoted above, the trial court referred to § 373, Tex.Prob.Code Ann. (Vernon 1980), when ordering the partial distribution.[1] Wardell argues that § 373 does not give the trial court the power to order a partial distribution by independent executors and concludes that the court's reliance on § 373 requires reversal. We do not agree.

We will assume, *arguendo,* that § 373 does not apply to independent executors. *See* Section 145(h) and *Gonzalez v. Gonzalez,* 309 S.W.2d 111, 113 (Tex.Civ.App.—Ft. Worth 1958, no writ). That does not mean, however, that the trial court's order was beyond its power. Apparently recognizing the need for a clarification of a court's power to order a partition and distribution by independent executors, the Legislature enacted § 149B in 1979. The section, specifically applicable to independent administrations, states:

(a) In addition to or in lieu of the right to an accounting provided by Section 149A of this code, at any time after the expiration of 12 months after all estate and all inheritance taxes are paid or three years from the date that an independent administration was created and the order appointing an independent executor was entered, whichever date is later, a person interested in the estate may petition the court for an accounting and distribution. The proceeding for an accounting and distribution may be brought in the county court if the county judge is licensed to practice law in the State of Texas or may be brought in a statutory probate court, a county court at law with probate jurisdic-

---

1. All section references are from the Texas Probate Code. Section 373, as pertinent here, reads as follows:

\* \* \* \* \* \*

(c) Partial Distribution. At any time after the original grant of letters testamentary or of administration, and the filing and approval of the inventory, the executor or administrator, or the heirs, devisees, or legatees of the estate, or

any of them, may, by written application filed in the court in which the estate is pending, request a distribution of any portion of the estate. All interested parties shall be personally cited, as in other distributions, including known creditors. The court may upon proper citation and hearing distribute any portion of the estate it deems advisable. . . .

tion, or a district court of the county. The court *may* order an accounting to be made with the court by the independent executor at such time as the court deems proper. The accounting shall include the information that the court deems necessary to determine whether *any part* of the estate should be distributed.

(b) On receipt of the accounting and, after notice to the independent executor and a hearing, unless the court finds a continued necessity for administration of the estate, the court may order its distribution by the independent executor to the persons entitled to the property.

(c) *If all the property in the estate is ordered distributed* by the executor and the estate is fully administered, the court also may order the independent executor to file a final account with the court and may enter an order closing the administration and terminating the power of the independent executor to act as executor. (Emphasis added).

It is apparent that the section authorizes the court to order an independent administrator to make a partial or complete distribution, as the trial court did in this case.

■ Wardell recognizes the existence of § 149B, but argues that reversible error exists because the court relied on § 373 as its authority to order the distribution. A judgment will not be reversed, however, unless the error complained of "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment...." Rule 434, Tex.R. Civ.Pro.; *See Head & Guild Equipment Company v. Bond,* 470 S.W.2d 909, 912–913 (Tex.Civ.App.—Beaumont 1971, no writ). Specifically, a proper judgment will not be reversed because the trial court made an erroneous conclusion of law. *Hoyt v. Geist,* 364 S.W.2d 461, 464 (Tex.Civ.App.—Houston 1963, no writ). Because the court was empowered under § 149B to do exactly what it did, and without doubt would have reached the same result under § 149B, we cannot conclude that its reliance on § 373

requires reversal. Point of error one is overruled.

By his second and third points, Wardell attacks the order directing the partition and distribution of the personal effects that were devised to the five daughters. In the second paragraph of her will, Mrs. Minnick devised to her daughters "all of my jewelry, household furniture, trophies and all other personal property (except cash in banks and Government Bonds hereinafter disposed of in this will) ... each to share and share alike therein." The trial court's order directing partition and distribution of those items reads as follows:

All of the jewelry, household furniture, fixtures, trophies and other personal property as set out in Paragraph II of the Will of Della Minnick shall be divided into five (5) numbered lots of equal value by Verris Chester Wardell, whose judgment as to value shall be conclusive on all of the parties. Beginning with the eldest distributee named in said Paragraph II of said will and continuing with each distributee in descending order of age, each distributee shall draw and shall receive one such lot to be delivered when all five lots have been drawn. In the event the personal property referred to in this paragraph, including the diamond rings, remains undisturbed [*sic*] sixty (60) days after the signing of this order, all such personal property shall be delivered by the persons having possession of said personal property to the Sheriff of Foard County, Texas, who is directed to sell such property at public sale as in the case of execution, retain expenses of sale and deliver the balance of the proceeds to Verris Chester Wardell for accounting and distribution between the five distributees entitled to receive same.

Wardell's first argument is that the trial court did not have the power, under § 373, to order him to make a distribution of the personalty in question. We have disposed of that argument in our resolution of the first point.

Wardell then argues that the trial court erroneously ordered a partition of the per-

sonalty because the requirements of § 150 [2] were not met. Specifically, he argues that there are neither allegations nor findings that the property in question is incapable of division. *See Matter of Estate of Furr,* 553 S.W.2d 676 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

The argument is not relevant to the first part of the order. The court ordered Wardell to partition the property and set out a fair and impartial procedure for him to follow in doing so; obviously the court thought the property could be partitioned.

■ We agree, however, that the court should not have ordered the sheriff to sell the property without a finding, under § 150, that it was incapable of division. Therefore, the last sentence of the portion of the judgment quoted above is erroneous and will be stricken.

The order of sale apparently was included as an alternate method of achieving a distribution if the parties did not cooperate. However, if Wardell or the other parties refuse to obey the court's order of distribution, there are other adequate remedies for enforcement of the judgment, art. 1911a, Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1982). Point of error two is overruled and point of

error three, complaining of the order of sale, is sustained.

Wardell's fourth point states that the trial court erred "in naming individuals entitled to receive proportions in its order of a partial distribution of the estate." Wardell apparently is arguing that, as independent executor, he not only has the right to decide when to distribute the estate but also the right to decide who is to receive it. As support for the latter argument, Wardell points to the broad power given independent executors by § 145(h) of the Probate Code and to paragraph seven of the will, which contains a forfeiture clause.[3]

We find no support in the law or the evidence for Wardell's argument. As discussed above, the trial court was empowered to order the distribution. The persons entitled to the distribution are determined by the testator, speaking through the will, not by the independent executor. In this case, Mrs. Minnick's instructions are clear and the trial court's order is faithful to those instructions.

■ The forfeiture clause to which Wardell refers is immaterial because there is no evidence that anyone has contested the will. If Wardell is contending that the requests for accounting, partition and distribution are contests within the terms of a

**2.** Section 150 reads as follows:

If the will does not distribute the entire estate of the testator, or provide a means for partition of said estate, or if no will was probated, the independent executor may file his final account in the county court in which the will was probated, or if no will was probated, in the county court in which the order appointing the independent executor was entered, and ask for either partition and distribution of the estate or an order of sale of any portion of the estate alleged by the independent executor and found by the court to be incapable of a fair and equal partition and distribution, or both; and the same either shall be partitioned and distributed or shall be sold, or both, in the manner provided for the partition and distribution of property and the sale of property incapable of division in estates administered under the direction of the county court.

**3.** Paragraph seven reads:

I ask my devisees and legatees, in harmony, in all things, to aid my executor in carrying out my wishes as expressed in this will; and in

order, if possible, to insure this, it is my will and I do here expressly provide and make it a condition precedent to the taking, receiving, vesting or enjoying of any property, benefit or thing whatsoever under and by virtue of this will, that no such devisee or legatee shall in any manner contest the probate thereof, or question or contest the same or any part or clause thereof in any judicial proceeding, and I further will and provide that should any such devisee or legatee so contest or question, or in any manner aid in any such contest or questioning, he or she shall thereupon lose and forfeit all right to any benefit and all right or title to any property or thing herein directly or indirectly devised or bequeathed to him or her; and every such right, title, property or thing is now by me expressly given, devised and bequeathed to and shall thereupon vest in such of my devisees and legatees herein as do not so question or contest or give aid in such questioning or contesting of this will or the probate, or any clause or provision thereof, in the same proportion as to value in which they otherwise take in value of my estate under this will.

forfeiture clause, the law is well settled to the contrary. *Upham v. Upham,* 200 S.W.2d 880, 883 (Tex.Civ.App.—Eastland 1947, writ ref'd n.r.e.); *Bethurum v. Browder,* 216 S.W.2d 992, 995 (Tex.Civ.App.—El Paso 1948, writ ref'd n.r.e.). Wardell has no authority to decide who receives the estate property. Point of error four is overruled.

By his fifth point, Wardell contends the trial court erred in ordering the independent executors to file final accountings by a certain date. The trial court's authority under § 149B, which includes the power to order final accountings, has been fully discussed and need not be repeated.

In addition, however, Wardell argues that if § 149B is applicable, the trial court was required to first order an accounting and then hold a hearing after the accounting was filed. Initially, we note that § 149B says the court "may" order an accounting. That term generally creates a discretionary and not a mandatory function. *Inwood North Homeowners' Ass'n, Inc. v. Meier,* 625 S.W.2d 742, 743 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). However, if an accounting is required before a hearing, the transcript before us contains numerous accountings filed prior to the hearing. Also, an accounting prepared by Wardell was introduced in evidence by him at the hearing and the condition of the estate was fully developed by the evidence. Thus, harm is neither perceived nor demonstrated because of the failure of the court to specifically direct the executors to file an accounting prior to the hearing. Rule 434, Tex.R.Civ.Pro.

Finally, argues Wardell, the court erred in ordering final accountings because there are numerous matters still to be disposed of, including suits seeking recovery of estate property and his claim for substantial executor's fees. We observe, however, that the court has not yet closed the estate and we are confident that it will not do so until it is satisfied that no valid purpose would be served by continuing the administration. We also observe that Wardell has had many years to pursue his search for missing estate property and at some point it must become apparent that the quest has no reasonable prospect of success. Point of error five is overruled.

By point six, Wardell contends the trial court erred in failing to remove Mr. Shirley as independent executor, arguing that he evidentially established the right to that relief under the provisions of § 149C, which permit removal of an independent executor if:

\* \* \* \* \* \*

(2) sufficient grounds appear to support belief that he has misapplied or embezzled, or that he is about to misapply or embezzle, all or any part of the property committed to his care;

\* \* \* \* \* \*

(4) he is proved to have been guilty of gross misconduct or gross mismanagement in the performance of his duties; or

(5) he . . . becomes legally incapacitated from properly performing his fiduciary duties.

Because Wardell had the burden of establishing the foregoing matters, he must demonstrate in this court that he did so conclusively, *Texas & N.O.R. Co. v. Burden,* 146 Tex. 109, 203 S.W.2d 522, 530 (1947), or that the trial court's failure to find any of the foregoing grounds is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973).

After examining the evidence, we are satisfied Wardell did not carry his burden. Although the record contains innumerable allegations of improper action against Shirley, the evidence on those matters is scant and disputed. Point of error six is overruled.

By point of error seven, Wardell contends Shirley automatically resigned as independent executor when, on August 11, 1978, he filed an instrument styled "Final Account of Independent Co-Executors" in the Probate Court. Wardell relies on § 151 of the Probate Code, which establishes a procedure for closing an independent administration by filing a final accounting verified by affi-

davit when the debts have been paid and the property distributed. Paragraph (b) of § 151 states that the filing of the affidavit "shall terminate the independent administration and the power and authority of the independent executor . . . ."

Wardell's contention concerning the effect of the instrument in question is somewhat puzzling because if, as he contends, it was a final accounting verified by affidavit as contemplated by § 151, then not only did it terminate Shirley's authority but it also terminated Wardell's authority and closed the estate. That does not appear to be a result desired by Wardell.

█ In any event, the contention is not meritorious. First, we are unable to determine from the record before us whether Shirley's "final accounting" was before the trial court. Although it is in the transcript before this court, it was not introduced in evidence and subsequent pleadings by Wardell indicate that it was not in the case file before the trial court. If the instrument was properly before the court, its filing did not automatically terminate the administration and Shirley's position as executor because (1) it is apparent from the instrument that the estate was not ready to be closed at that time, and (2) although styled a final account, the instrument is in reality a presentation of the status of the estate and a plea that the court order Wardell to file an accounting, pay various debts, partition and distribute the property and close the estate. In order to conclude that the instrument was a § 151 affidavit having the effect advanced by Wardell, we would be required to ignore its contents, read only its title and ignore the purpose of the statute. Point of error seven is overruled.

By point eight, Wardell contends the trial court erred in refusing to allow him to introduce evidence concerning various claims against the Shirleys. However, the rejected evidence is not in the record before us by bill of exceptions or otherwise; thus, nothing is presented for review. *LeNoble v. Weber, Hall, Cobb and Caudle, Inc.*, 503 S.W.2d 321, 324 (Tex.Civ.App.—Tyler 1973, no writ). Point of error eight is overruled.

By point nine, Wardell contends the trial court erred in refusing to hear evidence concerning the estate's tax liabilities. However, the record before us contains neither pleadings properly raising that issue in the trial court nor a bill of exceptions properly preserving the evidence; thus nothing is presented for review. *See Hubbard v. Lagow*, 576 S.W.2d 163, 166 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *LeNoble v. Weber, Hall, Cobb and Caudle, Inc., supra.* Point of error nine is overruled.

The judgment is reformed by deleting that portion of the judgment directing the sheriff to sell undistributed personal property and, as reformed, is affirmed.

### ON MOTION FOR REHEARING

In his motion for rehearing, Wardell continues to advance the contention that, as independent co-executor, he has the unfettered discretion to decide when the property in this estate will be distributed and who will receive it. Our conclusion that his perception of his power is in conflict with, among other things, § 149B of the Probate Code is characterized as "the demise of independent administrations in the State of Texas." To the contrary, this estate illustrates the reason for the enactment of § 149B. The estate has been in administration since 1971 and, to date, the persons entitled to the estate have not received any significant portion of it. Instead, for twelve years the co-executors have fought with each other while Wardell has, with minimal success, searched for allegedly missing estate property. As a result, the estate has potential liability for substantial executor's expenses and fees.

Obviously, if the persons entitled to an estate do not have a remedy under such circumstances, an independent administration is unworkable. Section 149B provides the necessary remedy and, under this record, the trial court granted the appropriate relief.

Wardell's reiterated argument that § 149B cannot be used to justify the trial

court's judgment because the section was not pled erroneously characterizes the live pleadings that were before the trial court. The pleadings do not refer to any specific provisions of the Probate Code; instead, the Shirleys and Robinson allege in general language the need for, and they request, the accounting and distribution ordered by the trial court. The pleadings fully inform Wardell of the relief being sought and, for the reasons previously stated, the trial court's reference to § 373 in the findings and conclusions was not reversible error.

Pointing to § 145(h), appellant also argues that the trial court could not act under § 149B because there was no evidence that an inventory, appraisement and list of claims has been filed or approved by the probate court. As with his argument under § 151, that contention may lead Wardell down a road he does not want to travel. Because no party has contended that the estate is not under an independent administration, we have not ruled on the effect of failing to prove that an inventory, appraisement and list of claims has been filed and approved. We observe, however, that by the specific language of § 145(h), the filing and approval of the document is the final prerequisite to the freeing of the estate from "further action of any nature" in court. If it has not been filed and approved, § 145(h) has not been activated and the estate remains a dependent administration subject to the general supervisory control of the appropriate court.[4]

In reurging his eighth point of error, Wardell contends a bill of exceptions was unnecessary to preserve error on excluded evidence because he made an offer of proof. We find nothing in the record, however, that summarizes "the facts which the witness would have related had he been allowed to do so", *Matter of Marriage of Goodwin*, 562 S.W.2d 532, 534 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.), or oth-

erwise properly informs this court or the trial court of the identity of the witnesses and the substance of the excluded evidence.

 Neither the foregoing arguments nor others advanced by Wardell in his motion for rehearing demonstrate error in our decision. Wardell has, however, questioned our assessment of costs, pointing out that our judgment appears to assess them against him individually. Because he was sued as executor, and because no one urges a different assessment, we conclude that the costs should be assessed against him in his official capacity. Therefore, an appropriate amended judgment will be rendered. In all other respects, the motion for rehearing is overruled.

---

4. Section 145(h) states:

When an independent administration has been created, and the order appointing an independent executor has been entered by the county court, and the inventory, appraisement, and list of aforesaid has been filed by the exec-

utor and approved by the county court, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court.