Joyce Novian SAMMONS, Appellant,

v.

Mary Ann ELDER and Robert Hicks Harvey, Individually and as Independent Executors of The Estate of Waldine Harvey Novian, Deceased, Appellees.

No. 10–95–234–CV.

Court of Appeals of Texas,
Waco.

Feb. 5, 1997.

Rehearing Overruled March 31, 1997.

Elwood Cluck, San Antonio, for appellant.

Michael J. Gulig and Peter K. Rusek, Sheehy, Lovelace & Mayfield, P.C., Waco, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

This will construction case primarily concerns the interpretation of the term "savings account and/or savings certificate." After a bench trial, the court found that all but two of the decedent's, Waldine Harvey Novian's ("Novian"), various money market accounts, certificates of deposit, and individual retirement accounts constituted a "savings account and/or savings certificate," thereby passing to her two children under the will. The trial court found the two remaining accounts to be checking accounts, which passed equally to her stepdaughter and children. · Appellant complains of the trial court's rulings regarding the existence of a "savings account and/or savings certificate," the failure to remove Appellees as independent executors of Novian's estate, and the denial of attorney's fees. By cross-points, Appellees complain that the trial court's findings of fact and conclusions of law and the final judgment do not coincide and, further, complain of the denial of attorney's fees. Because we find that the trial court did not err in its rendition concerning the interpretation and administration of this will, we affirm.

## FACTS

Novian bequeathed to her two natural children, Mary Ann Elder ("Elder") and Robert Hicks Harvey ("Harvey"), all the money in her "savings account and/or savings certificate" under Article Third of her will. Joyce Novian Sammons ("Sammons"), Novian's stepdaughter, received a residuary interest that passed equally among her, Elder and Harvey under Article Fourth. In an inventory filed and approved by the County Court, Elder and Harvey, acting in their capacities as independent executors, listed Novian's various accounts as checking accounts, money market accounts, certificates of deposit, and individual retirement accounts. Sammons claimed the inventory reflected that no "savings account and/or saving certificate" existed at the time of Novian's death; therefore, any bequest under Article Third failed based upon the doctrine of ademption. *See Shriner's Hospital for Crippled Children v. Stahl,* 610 S.W.2d 147 (Tex.1980). Thus, Sammons argued all the accounts listed in the inventory passed equally to her, Elder, and Harvey under Article Fourth. Elder and Harvey claimed all the accounts constituted a "savings account and/or savings certificate" under Article Third.

## PRESERVATION

Initially, we must consider whether the parties preserved their complaints. To preserve a complaint of error, a party must present to the trial court a timely request, objection, or motion detailing the specific grounds for why the court should rule as the party desires. Tex.R.App.P. 52(a). In a non-jury trial, a party attacking the legal or factual sufficiency of the evidence supporting a finding of fact or complaining that a finding of fact was established as a matter of law or was against the overwhelming weight of the evidence need not comply with Rule 52(a). *Id.* 52(d). In this case, both parties attacked only the trial court's conclusions of law. Attacks on conclusions of law are not listed in Rule 52(d). *Id.* We find that conclusions of law in a nonjury trial are reviewable by this Court without preservation under Rule 52(a).[1] *See Spiller v. Spiller,* 901 S.W.2d

1. It is unclear whether the trial court's plenary power to change its judgment is extended by filing a request for findings of fact and conclu-

sions of law. A timely filed request for findings of fact and conclusions of law extends the appellate timetable. Tex.R.App.P. 41(a)(1). However,

553, 556 (Tex.App.—San Antonio 1995, writ denied); *Westech Eng. v. Clearwater Constructors,* 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ). We recognize that other courts require a post-judgment request, objection, or motion in compliance with Rule 52(a). *Regan v. Lee,* 879 S.W.2d 133, 136 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Winters v. Arm Refining Co., Inc.,* 830 S.W.2d 737, 738–39 (Tex.App.—Corpus Christi 1992, writ denied). However, we believe conclusions of law are always reviewable. *Spiller,* 901 S.W.2d at 556; *Westech Eng.,* 835 S.W.2d at 196. Thus, even though neither party complied with Rule 52(a), we review the merits of this case.[2]

## ACCOUNT CHARACTERIZATION

### Res Judicata, Equitable Estoppel and Collateral Estoppel

■ Sammons' third point complains that the trial court erred in finding the existence of a "savings account and/or savings certificate" because Elder and Harvey did not list any savings accounts or savings certificates in the inventory. Relying on judicial admission, res judicata, equitable estoppel and collateral estoppel theories, Sammons asserts that Elder and Harvey may not contradict their characterization of the accounts in the inventory. However, the record does not indicate that Sammons advanced these theories before the trial court. Thus, the trial court filed no conclusions of law on these theories. Sammons cannot attack conclusions of law the trial court never made; she can only appeal fact determinations specified under Rule 52(d) or comply with Rule 52(a). Tex.R.App.P. 52(a), 52(d). She did neither. Therefore, her third point of error is overruled. *D/FW Commercial Roofing Co., Inc. v. Mehra,* 854 S.W.2d 182, 189 (Tex.App.—Dallas 1993, no writ); *Andrews v. ABJ Adjusters, Inc.,* 800 S.W.2d 567, 568–69 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *NCNB Texas Nat. Bank v. Sterling Projects,* 789 S.W.2d 358, 360 (Tex.App.—Dallas 1990, writ dism'd w.o.j.).

### Ambiguity

■ In her second point, Sammons complains the trial court erred in holding the term "savings account and/or savings certificate" ambiguous. Whether an ambiguity exists is generally a question of law for the court. *Hudson v. Hopkins,* 799 S.W.2d 783, 786 (Tex.App.—Tyler 1990, no writ). A conclusion of law will not be reversed unless it is erroneous as a matter of law. *Spiller,* 901 S.W.2d at 556; *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ). We determine error by reviewing the legal conclusions drawn from the facts found to determine their correctness. *Westech Eng.,* 835 S.W.2d at 196 n. 1.

■ Sammons alleges that the meaning of a "savings account and/or savings certificate" is unambiguous. However, she fails to cite to a case defining this term. Instead, she relies solely on the dictionary definition of a "savings account." Thus, Sammons defines a savings account as "an account (as in a bank) on which interest is usually paid and from which withdrawals can be made and usually only by presentation of a passbook or by written authorization on a prescribed form." Whereas a savings certificate is "a savings account evidenced by a certificate rather than a passbook."[3] Certificates of

---

this extension does not necessarily include the trial court's plenary power. This could lead to a situation where the trial court amends or alters its conclusions of law so that they no longer support the judgment, yet the court is powerless to change its judgment. *But see Electronic Power Design v. R.A. Hanson,* 821 S.W.2d 170, 171 (Tex.App.—Houston [14th Dist.] 1991, no writ) (trial court's plenary power over its judgment is extended when request for findings of fact and conclusions of law filed).

2. Sammons made a general request for findings of fact and conclusions of law. However, this request failed to meet the specificity requirements of Rule 52(a). Tex.R.App.P. 52(a). This request was the only request, objection, or motion filed post-judgment.

3. Sammons attempts to engraft a statutory definition of a savings certificate upon Novian's will. *Garza v. Cavazos,* 148 Tex. 138, 221 S.W.2d 549, 553 (1949) (law reads into will the applicable provisions of statutes and makes them a part of the will). However, the statute is only engrafted upon the will if the statute is applicable. *Id.* Sammons relies upon inapplicable sections of a statute that define terms in the context of a Savings & Loan Association. Tex.Rev.Civ.Stat. Ann. art. 852a, §§ 6.03–6.04 (Vernon 1964).

deposit, individual retirement accounts, and money market accounts are not excluded from qualifying as "savings accounts or savings certificates" under Sammons' definitions. Considering the lack of case law and the broad dictionary definition, we cannot say that the court erred as a matter of law in finding the term "savings account and/or savings certificate" ambiguous in the context of this will. *Piazza*, 909 S.W.2d at 532; *Westech Eng.*, 835 S.W.2d at 196. Therefore, Sammons' second point is overruled.

■■■ Sammons' fourth point complains of the trial court's use of extrinsic evidence to determine Novian's intent in the usage of a "savings account and/or savings certificate." When a term in a will is capable of more than one meaning, the court should consider extrinsic evidence of the testatrix's intent. *Davis v. Shanks*, 898 S.W.2d 285, 286 (Tex.1995). Because an ambiguity existed in this will, the trial court correctly considered extrinsic evidence in an attempt to ascertain how Novian intended to use this term. Sammons' fourth point of error is overruled.

### Certificates of Deposit and Money Market Accounts

In its findings of fact and conclusions of law, the trial court found that the "dollar amount and frequency of withdrawals and/or transfers ... is completely consistent with such accounts being 'savings accounts' or 'savings certificates' within the plain and usual meaning of those terms." Sammons argues in point five that the trial court erred by relying on a "frequency of transactions" standard for characterizing the accounts. Point eight repeats this complaint and applies it specifically to the money market accounts. In addition, Sammons complains in her seventh point of error that the court erred in characterizing the certificates of deposit as savings accounts instead of promissory notes. *See Thompson v. Thompson*, 149 Tex. 632, 236 S.W.2d 779, 791 (1951); *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust*, 667 S.W.2d 572, 575 (Tex.App.—Dallas 1984, no writ). Each point complains about the legal standard the court fashioned to characterize these accounts. *Bloomer v.*

*Bloomer*, 927 S.W.2d 118, 121 n. 5 (Tex. App.—Houston [1st Dist.] 1996, writ denied).

■■■ We must determine whether this legal conclusion is erroneous as a matter of law. *Spiller*, 901 S.W.2d at 556; *Piazza*, 909 S.W.2d at 532. This determination is made by reviewing the conclusions drawn from the facts found to determine their correctness. *Westech Eng.*, 835 S.W.2d at 196 n. 1. Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Spiller*, 901 S.W.2d at 556; *Westech Eng.*, 835 S.W.2d at 196.

■■■ The primary goal for courts in interpreting wills is to determine the intent of the testatrix. *Diemer v. Diemer*, 717 S.W.2d 160, 162 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *In re Hite*, 700 S.W.2d 713, 716 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Bristol v. Mazza*, 288 S.W.2d 564, 565 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.). The intention of the testatrix must be ascertained from the words used in the will. *White v. Taylor*, 155 Tex. 392, 286 S.W.2d 925, 926 (1956); *Diemer*, 717 S.W.2d at 162; *In re Hite*, 700 S.W.2d at 716; *Bristol*, 288 S.W.2d at 565. Words in general, whether technical or generic, are to be taken in their plain and usual sense, unless the testatrix demonstrated a clear intention to use them in another sense. *Id.* Thus, the intent of the testatrix governs our interpretation of any will. *McGill v. Johnson*, 799 S.W.2d 673, 674 (Tex.1990).

■■■ Sammons urges us to adopt the dictionary definition of a "savings account." We find her definition, as stated above, not helpful and decline to adopt it. Instead, we believe defining "savings" then adding that definition to accounts or certificates provides a better, more understandable definition of a savings account or savings certificate in plain language. "Savings" is defined as preserving something from danger, destruction or loss. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1045 (1985); *Gadoury v. Caldwell*, 425 So.2d 220, 221 (Fla.Dist.Ct.App.1983). The Probate Code defines an account to mean a contract of deposit of funds between a depositor and a financial institution, and includes a

checking account, savings account, certificate of deposit, share account, and other like arrangement. TEX.PROB.CODE ANN. § 436(1) (Vernon 1980). Thus, the ordinary, plain meaning of a "savings" account or certificate is an account or certificate, which usually bears interest, in a financial institution to which monies are deposited so that the monies are protected from loss or destruction. We believe this definition of "savings account and/or savings certificate" comports with Novian's testamentary dispositive intent.

It would be inappropriate to conclude that money deposited in a bank, placed there for "saving" in an account or certificate, is not a savings account or savings certificate because it is termed a certificate of deposit or money market account.[4] *Gadoury*, 425 So.2d at 222; *see also In re Estate of O'Connell*, 29 Cal. App.3d 526, 105 Cal.Rptr. 590, 593 (1972) (most laymen do not distinguish their savings on deposit based upon the type of account—savings pass book or certificate of deposit). It is illogical to preclude an account or certificate from being a savings account or savings certificate merely because the typical certificate of deposit or money market account requires the depositor to pay a penalty for early withdrawal. *Gadoury*, 425 So.2d at 222. The restrictions on these accounts or certificates encourage the depositor to do what they were designed to do—save money. *Id.*

■■■■ Because certificates of deposit and money market accounts are not excluded from this definition of a savings account or savings certificate, we must determine how Novian intended to use these accounts or certificates. If she intended to use these accounts or certificates for savings, then they pass under Article Third of her will. If she intended to use these accounts or certificates for other than savings, then they pass under Article Fourth. Frequency of transactions on an account or certificate is one factor to use in determining whether Novian intended to use the account or certificate for non-saving purposes (i.e., commercial transac-

tions) or for savings. Thus, we find that the trial court did not err as a matter of law by using the frequency of transactions as a factor in characterizing these accounts or certificates. *Spiller*, 901 S.W.2d at 556; *Piazza*, 909 S.W.2d at 532. Furthermore, we do not find that the trial court erred by characterizing the certificates of deposit as savings accounts or savings certificates. *Id.* Therefore, we overrule Sammons' fifth, seventh and eighth points of error.

### Individual Retirement Accounts

■■■■ In her sixth point of error, Sammons argues the court erred in failing to apply the statutory definition of individual retirement accounts. An individual retirement account ("IRA") is defined as a trust, custodial arrangement, or annuity under Section 408(a) or (b), Internal Revenue Code (26 U.S.C.A. § 408 (1986)). TEX.PROB.CODE ANN. § 450(c)(2). (Vernon Supp.1997). An IRA is a unique type of trust. *Colvin v. Alta Mesa Resources, Inc.*, 920 S.W.2d 688, 690 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *Lee v. Gutierrez*, 876 S.W.2d 382, 385 (Tex. App.—Austin 1994, writ denied). The depositor who creates the IRA is the beneficiary of the trust, and the bank, as trustee, acts only as the custodian of the account. *Id.* The beneficiary possesses the sole authority to determine how the trust corpus may be invested or may withdraw the money at any time, though there may be a penalty imposed for early withdrawal. *Id.* Because a beneficiary has unlimited capacity to reach the funds, an IRA is "nothing more than a savings account established to defer tax liability and to supplement the beneficiary's retirement income in the future." *Colvin*, 920 S.W.2d at 690. In other words, a person uses an IRA to save for retirement. Therefore, the trial court did not err in failing to apply the statutory definition of IRAs when it characterized them as savings accounts. *Spiller*, 901 S.W.2d at 556; *Piazza*, 909 S.W.2d at 532. Moreover, we believe the trial court's characterization of the IRAs coincides with Novian's testamentary disposi-

---

**4.** The Supreme Court has held that a certificate of deposit is not "cash money." *Thompson*, 236 S.W.2d at 790–91. However, in that case the testator bequeathed to his children "all cash money that may be on hand at the time" of his death. *Id.* A bequest of *cash on hand* is distinguishable from a bequest of a "savings account and/or savings certificate."

tive intent. Sammons' sixth point of error is overruled.

## ADEMPTION

■■■■ Sammons complains in her first point of error that the trial court failed to apply the law of ademption because no "savings account and/or savings certificate" existed to pass under Article Third. Ademption is the doctrine by which a specific bequest becomes inoperative because of the disappearance of its subject matter from a testatrix's estate during her lifetime. *Stahl,* 610 S.W.2d at 148; *Opperman v. Anderson,* 782 S.W.2d 8, 9 (Tex.App.—San Antonio 1989, writ denied). Although we ordinarily make a preliminary determination of whether a bequest is specific or general, such a determination is not necessary in this case.[5] *Opperman,* 782 S.W.2d at 9. Ademption does not apply to this bequest. Therefore, we overrule Sammons' first point.

## REMOVAL OF EXECUTORS

■■■ In her ninth point of error, Sammons claims the trial court erred in not removing Elder and Harvey as independent executors. Sammons asserted several grounds for removal, including failure to file a complete inventory, misapplication of property, failure to file an accounting, gross misconduct, gross mismanagement of the estate, and legal incapacity to serve as fiduciaries. Under the Probate Code, an independent executor may be removed when: (1) he fails to timely file an inventory of the property of the estate and list of claims that have come to his knowledge; (2) sufficient grounds appear to support the belief that he has misapplied or embezzled, or that he is about to misapply or embezzle, all or any part of the property in his care; (3) he fails to make an accounting which is required by law to be made; (4) he fails to timely file the notice required by Section 128A of the Probate Code; (5) he is proved to have been guilty of gross misconduct or gross mismanagement in

the performance of his duties; or (6) he becomes legally incapacitated from properly performing his fiduciary duties. TEX.PROB. CODE ANN. § 149C(a) (Vernon Supp.1997).

■■■■ "Gross misconduct" and "gross mismanagement" include at a minimum: (1) any willful omission to perform a legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's interests. *Street v. Skipper,* 887 S.W.2d 78, 82 (Tex.App.—Fort Worth 1994, writ denied); *Geeslin v. McElhenney,* 788 S.W.2d 683, 685 (Tex.App.—Austin 1990, no writ). Sammons had the burden to establish a violation of Section 149C. *In re Estate of Canales,* 837 S.W.2d 662, 669 (Tex.App.—San Antonio 1992, no writ); *Matter of Estate of Minnick,* 653 S.W.2d 503, 508 (Tex.App.—Amarillo 1983, no writ). To prevail on appeal, she must demonstrate that she conclusively proved her case or that the court's failure to find for her on any of the grounds is so against the great weight and preponderance of the evidence to be unjust. *Id.* Although Sammons made numerous allegations of wrongdoing against Elder and Harvey as independent executors, she failed to prove they willfully omitted to perform a legal duty, intentionally committed a wrong act, and breached a fiduciary duty. *Street,* 887 S.W.2d at 82; *Geeslin,* 788 S.W.2d at 685. After examining the evidence, we are satisfied that Sammons did not carry her burden to show gross misconduct or gross mismanagement. *Estate of Canales,* 837 S.W.2d at 669; *Estate of Minnick,* 653 S.W.2d at 508. Also, she has failed to show that the trial court's finding that Elder and Harvey did not commit acts of gross misconduct or gross mismanagement is so against the great weight and preponderance of the evidence as to be unjust. *Id.* Furthermore, her claim that Elder and Harvey failed to file an inventory and an accounting is without merit as the trial court concluded that the inventory and the requested accounting were filed.

---

**5.** If the bequest of a "savings account and/or savings certificate" is a specific bequest, then ademption does not apply because "accounts or certificates" existed at the time of Novian's death. If the "savings account and/or savings certificate" qualifies as a general bequest, then

ademption does not apply because the doctrine does not apply to this category of bequests. Thus, the determination of whether this bequest was specific or general does not affect the outcome.

Reaching the acme of her point, Sammons argues that Elder and Harvey cannot be both independent executors and beneficiaries because this creates a conflict between their personal interests and their fiduciary duty to the estate; and, thus, Elder and Harvey are legally incapacitated from performing their fiduciary duties. TEX.PROB. CODE ANN. § 149C(a)(6). To adopt Sammons' interpretation would paralyze the independent administration of estates in Texas. Family members would no longer be able to serve as independent executors and receive property under the will if mere service created a conflict requiring disqualification.

Furthermore, the cases cited by Sammons do not support her legal-incapacity position. In *Street*, 887 S.W.2d 78, the co-administrator [6] claimed certain property of the decedent belonged to her as community property instead of the decedent's estate. In *Formby v. Bradley*, 695 S.W.2d 782 (Tex.App.—Tyler 1985, writ ref'd n.r.e.), the decedent's wife claimed that portions of the decedent's property belonged to her as community property and not to the decedent's estate. In *Bays v. Jordan*, 622 S.W.2d 148 (Tex.App.—Fort Worth 1981, no writ), a co-executor claimed that she, not the estate, owned substantially all the assets of the estate pursuant to a joint venture agreement. In *Hitt v. Dumitrov*, 598 S.W.2d 355 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ), one administrator represented separate estates which had inconsistent and competing claims for life insurance proceeds. In *Haynes v. Clanton*, 257 S.W.2d 789 (Tex.Civ.App.—El Paso 1953, writ dism'd by agr.), a dependent administrator asserted an interest in property adverse, incompatible, and hostile to the estate. These cases involve situations where the executor or administrator of the estate claimed ownership to property in direct opposition to the *estate*. In the present case, the executors claim ownership to property as beneficiaries in direct opposition to the claim of another *beneficiary*. We find Sammons failed to prove conclusively that Elder and Harvey breached any fiduciary duty to the

estate. *Estate of Canales*, 837 S.W.2d at 669; *Estate of Minnick*, 653 S.W.2d at 508. Additionally, she failed to prove the trial court's conclusion that Elder and Harvey breached no fiduciary duty was against the great weight and preponderance of the evidence. *Id.* Thus, we find that Elder and Harvey are not per se legally incapacitated from serving as independent executors because they are also beneficiaries of the estate. We overrule Sammons' ninth point of error.

## ATTORNEY'S FEES

In her tenth point, Sammons claims that the trial court erred in denying her request for attorney's fees under the Declaratory Judgment Act and the Probate Code. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986); TEX.PROB.CODE ANN. § 149C(d). By way of their second cross-point, Elder and Harvey also claim that the trial court erred in not awarding them attorney's fees under the Declaratory Judgment Act. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009. The costs and expenses incurred by a party seeking removal of an independent executor appointed without bond, including reasonable attorney's fees and expenses, *may* be paid out of the estate. TEX. PROB.CODE ANN. § 149C(d). Whether to award attorney's fees, and to which party, is a decision that is solely within the trial court's discretion and will not be reversed absent a clear abuse of that discretion. *Street*, 887 S.W.2d at 83; *West Texas Rehabilitation Ctr. v. Allen*, 810 S.W.2d 870, 874 (Tex.App.—Austin 1991, no writ). Sammons alleges that the trial court abused its discretion because it stated only that it was acting in its discretion in denying attorney's fees. We do not find an abuse of discretion in the trial court's failure to give Sammons a specific reason for denying attorney's fees. Furthermore, because no party wholly prevailed, we find no abuse of discretion in the court's refusal to award attorney's fees under the Declaratory Judgment Act. *Diemer*, 717 S.W.2d at 163. Therefore, Sammons' tenth

---

6. Although an administrator is removed under section 222 of the Probate Code, we find the grounds for removal analogous to the removal of an executor under section 149C. TEX.PROB.CODE ANN. § 222 (Vernon Supp.1997).

point and Elder and Harvey's second cross-point are overruled.

### *JUDGMENT COMPLAINT*

Finally, Elder and Harvey in their first cross-point argue that the final judgment designates an account as a checking account while the findings of fact and conclusions of law define the same account as a savings account. However, arguments regarding an inconsistency between the fact-finder's findings and conclusions and the judgment must have been brought to the trial court's attention in some manner. *See Strahan v. Davis,* 872 S.W.2d 828, 836–37 (Tex.App.—Waco 1994, writ denied); *Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494, 499 (Tex.App.—San Antonio 1991, writ denied). Moreover, as a general rule, an appellate court will not consider cross-points unless the appellees expressed dissatisfaction in some manner with the judgment in the trial court. *D/FW Commercial Roofing,* 854 S.W.2d at 190. Elder and Harvey also face the burden to bring forward a record to support their cross-point. *Pentes Design, Inc. v. Perez,* 840 S.W.2d 75, 79 (Tex.App.—Corpus Christi 1992, writ denied). Nothing in the record before us indicates that Elder and Harvey expressed dissatisfaction to the trial court with its judgment. Thus, we overrule their first cross-point.

We affirm the judgment.