Joseph PIAZZA, Appellant,

v.

The CITY OF GRANGER, Texas, Appellee.

No. 03–94–00461–CV.

Court of Appeals of Texas, Austin.

July 12, 1995.

Rehearing Overruled Aug. 16, 1995.

R. John Cullar, Mills, Millar, Matkin & Cullar, Waco, for appellant.

Arthur L. Walker, Walker & Satterthwaite, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

Following a bench trial in a suit for declaratory judgment and injunctive relief, the trial court rendered a take-nothing judgment in favor of appellee the City of Granger, Texas (the "City"). Appellant Joseph Piazza, the City's only police officer, appeals. Piazza's eight points of error complain about the trial court's interpretation of the notice requirements for emergency meetings as provided by the Texas Open Meetings Act, Act of May 1, 1969, 61st Leg., R.S., ch. 227, § 1, 1969 Tex.Gen.Laws 674, 674, *amended by* Act of May 31, 1987, 70th Leg., R.S., ch. 549, § 5, 1987 Tex.Gen.Laws 2211, 2213 (Tex.Gov't Code Ann. § 551.045, since amended) (hereinafter "section 3A(h)"), and the requirements detailing the type of complaint against a law enforcement officer that the head of a police department may consider. Act of May 16, 1969, 61st Leg., ch. 407, § 1, 1969 Tex. Gen.Laws 1333, 1333–34 (Tex.Gov't Code Ann. §§ 614.021–.023, since amended) (hereinafter "former art. 6252–20"). We will reverse the trial court's judgment and remand the cause to the trial court for rendition of judgment consistent with our opinion.

**BACKGROUND**

Piazza worked as the City's only police officer from March 14, 1990, until March 3, 1993. Sometime before March 3, 1993, the City Mayor instructed Piazza not to travel to Taylor, Texas, to interview a suspect in a case involving the disappearance of some Christmas ornaments from the City park. Nevertheless, Piazza went to Taylor and withdrew a student from class to question her. The student's mother called a City councilman around March 1 or 2, 1993, to explain to him that he would see her walking through the City Council session that evening because she was meeting with Piazza to discuss why he had wanted to talk to her daughter. On the morning of March 3, 1993, the councilman phoned the City Mayor to tell her that he had learned Piazza had traveled to Taylor and had questioned a child at school.

On March 3, 1993, at 9:25 a.m., the City Secretary posted a "NOTICE OF SPECIAL (EMERGENCY) MEETING OF THE GOVERNING BODY OF THE [CITY OF] GRANGER" (the "Notice"). The Notice indicated that "[t]he fact that the [City] council have a lack of confidence in the officer [Piazza] ... makes it an emergency or urgent public necessity that said meeting be held." The meeting's subject, as stated in the notice, was to be the consideration of a resolution to terminate Piazza pursuant to Local Government Code section 22.077(b) "on the Basis of the Council's Lack of [sic] Want of Confidence" in him.[1]

The City Council convened the emergency meeting at 12:08 p.m. on March 3, 1993. The meeting adjourned four minutes later at 12:12 p.m. During the meeting, at which Piazza, four of the five City councilmembers, the City Mayor, and the City Secretary were present, the City Council decided by a vote of four to zero to terminate Piazza for lack of confidence. The minutes of the emergency meeting do not reflect whether any discussion of the motion to pass the resolution to terminate Piazza took place.

The trial court, in its findings of fact and conclusions of law, found, among other facts, that Piazza had disregarded the instructions of the City Council and the City Mayor; that the City Council and City Mayor had a good

---

1. Section 22.077(b) of the Local Government Code provides:

    If the governing body lacks confidence in a municipal officer elected by the governing body, the governing body may remove the officer at any time. The removal is effective only if two-thirds of the elected aldermen vote in favor of a resolution declaring the lack of confidence.

    Tex.Loc.Gov't Code Ann. § 22.077(b) (West 1988).

faith belief that an emergency existed at the time the emergency meeting was called; and that an emergency as contemplated by section 3A(h) existed at the time the emergency meeting was called.[2] The court concluded as a matter of law that because an emergency existed, the meeting did not require seventy-two hours' notice. The trial court did not declare, as requested by Piazza, that the City's termination was invalid because the City violated section 3A(h) or former art. 6252-20, and thus concluded that Piazza was not entitled to injunctive relief. Piazza appeals from the trial court's take-nothing judgment.

## DISCUSSION

■ In a portion of his first point of error, Piazza challenges the trial court's Conclusion of Law 2(b), which states: "Because of the fact that a bona-fide emergency existed, there was no requirement pursuant to [section 3A(h)], Revised Civil Statutes, that 72 hours notice of the meeting be given." Piazza complains that the trial court erroneously concluded the City was not required to give seventy-two hours' notice of the meeting because the evidence established as a matter of law that the City failed to comply with the notice provisions of section 3A(h). As a preliminary matter, the City responds by arguing that on appeal, Piazza has raised for the first time the issue that the Notice was defective and that he has therefore waived his first point of error. We disagree. Piazza's live pleadings allege that the City violated section 3A(h) in the following respects:

(1) The Agenda [Notice] ... posted for the March 3, 1993 meeting was not posted 72 hours in advance of the meeting wherein Plaintiff [Piazza] was terminated.

(2) As a matter of law, a city council's lack of confidence in a city officer does not constitute an emergency or matter of public necessity to allow less than 72 hours notice of such meeting.

While Piazza's pleadings do not expressly complain about defective notice, they nevertheless attack the sufficiency of the Notice by suggesting that the notation "lack of confidence" does not clearly identify the emergency or matter of public necessity required by section 3A(h) in order to forgo seventy-two hours' notice. *See* § 3A(h). In addition, Piazza's counsel not only introduced the Notice into evidence, but also argued the defectiveness-of-notice issue to the trial court, stating at one point in closing argument, "I think that, clearly, Your Honor, it's established here that that notice was bad and invalid." We conclude that Piazza presented the defectiveness-of-notice issue to the trial court, and we therefore address the merits of the part of Piazza's first point of error challenging Conclusion of Law 2(b).

■ An appellate court reviews trial court conclusions of law de novo as legal questions. *Kirkwood v. City of Corsicana*, 871 S.W.2d 544, 546 (Tex.App.—Waco 1994, no writ). A conclusion of law will not be reversed unless it is erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). Even an incorrect conclusion of law will not require a reversal if the controlling findings of fact support a correct legal theory. *Id.*

In the instant cause, Piazza argues that contrary to the trial court's conclusion of law, the City should have given seventy-two hours' notice of the meeting. Piazza bases his argument on his assertion that the Notice declaring the City Council's "lack of confidence" in him did not comply with the emergency notice provisions of section 3A(h). Those notice provisions require clear identification of the emergency; less than seventy-two hours' notice is acceptable "[i]n case of emergency or urgent public necessity, *which shall be clearly identified in the notice.*" § 3A(h) (emphasis added). Cases of emergency have been limited by the legislature "to imminent threats to public health and

---

**2.** Section 3A(h) provides in part:
Notice of a meeting must be posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting.... *In case of emergency or urgent public necessity, which shall be clearly identified in the notice, it shall be sufficient if the notice is posted two hours before the meeting is convened.*
(Emphasis added.)

safety or reasonably unforeseeable situations requiring immediate action by the governmental body." *Id.*

▮▮▮ The trial court's conclusion that seventy-two hours' notice of the City Council meeting was not required by the notice provisions of section 3A(h) was based on the finding that an emergency existed at the time the meeting was called. However, we conclude that the actual existence of an emergency only secondarily affects the notice provisions of section 3A(h); even if an emergency as designated by section 3A(h) exists, notice of an emergency meeting is nevertheless defective if it fails to clearly identify the existing emergency.[3] The trial court reached no conclusion regarding whether the Notice clearly identified the emergency it found existed. If the Notice clearly identified the emergency giving rise to the emergency meeting, then the seventy-two hour notice period, as concluded by the trial court, would not have been required. *Id.* We thus look to determine whether the Notice, through its notation "lack of confidence," clearly identified the emergency the trial court found to exist.

▮▮▮ Section 3A(h) offers guidelines indicating how an emergency is to be clearly identified. Language providing that an authorized public official "shall post the notice taking at face value *the reason for the emergency as stated by the governmental body,*" *Id.* (emphasis added), indicates to us that an emergency is clearly identified when the *reason* for the emergency is stated in the notice. *See* Op.Tex.Att'y Gen. No. JM–1037 (1989) (advising that section 3A(h) requires notice for emergency meetings to "state the reason for the emergency"). The requirement that the reason for the emergency be stated contrasts with the emergency identification requirements under the pre–1987 Open Meetings Act. *See* Act of May 27, 1975, 64th Leg., R.S., ch. 367, § 1, 1975 Tex.Gen.Laws

968, 968;[4] *see also River Road Neighborhood Ass'n v. South Tex. Sports,* 720 S.W.2d 551, 554 (Tex.App.—San Antonio 1986, writ dism'd) (construing pre–1987 Open Meetings notice statute to require only statement that emergency existed, not statement of nature of emergency); *Creedmoor Maha Water Supply Corp. v. Barton Springs—Edwards Aquifer Conservation Dist.,* 784 S.W.2d 79, 85 (Tex.App.—Austin 1989, writ denied) (noting that pre–1987 version of section 3A(h) "was interpreted as requiring only a statement that an emergency existed, *as opposed to some description of the emergency or the facts giving rise to it* ") (emphasis added). In addition, section 3A(h) implies that the reason for the emergency, in order to clearly identify an emergency or urgent public necessity, must describe (1) an *imminent* threat to public health and safety or (2) a reasonably *unforeseeable* situation requiring *immediate* action. *See* § 3A(h).

▮▮▮ The only emergency stated in the Notice is the fact that "the council have a lack of confidence in [Piazza]." We conclude as a matter of law that the reason "lack of confidence" in a police officer, without further detail, does not clearly identify an emergency or urgent public necessity required by section 3A(h) to authorize less than seventy-two hours' notice of a meeting held by the City Council. Without further description or explanation in the Notice, the words "lack of confidence" fail to describe an *unforeseeable* situation requiring *immediate* action: the development of a "lack of confidence" in a police officer by a governing body is a foreseeable situation, so foreseeable, in fact, that the Local Government Code specifically provides that a police officer may be terminated for that very reason. *See* Tex.Loc.Gov't Code Ann. § 22.077(b) (West 1988). Likewise, the Notice does not describe an *imminent* threat to public health and safety; the phrase "lack of confidence" connotes the

---

3. Whether an emergency actually exists is a consideration bearing on the validity of an emergency meeting more than the sufficiency of notice. Even if the meeting notice clearly identifies an emergency, the actions taken at the emergency meeting will be void if an emergency did not in fact exist.

4. The pre–1987 version of the statute provided: "In case of emergency or urgent public necessity, which *shall be expressed in the notice,* it shall be sufficient if the notice is posted two hours before the meeting is convened." Act of May 27, 1975, 64th Leg., R.S., ch. 367, § 1, 1975 Tex.Gen.Laws 968, 968 (emphasis added).

City's lack of trust, reliance, or faith in Piazza, and while indicating that the City Council may fear that the public health and safety may be threatened, the phrase does not indicate an imminent threat.

The City, citing *Creedmoor*, 784 S.W.2d at 86, argues that the phrase "lack of confidence" informs the reader of a specific reason for the proposed termination and that the Notice leaves no doubt about what action the City intended to take. We agree. Nevertheless, the portion of the *Creedmoor* opinion to which the City refers discusses the Open Meetings Act notice requirements for the subject matter of proposed meetings. We are not persuaded that adequate notice of the subject matter of the City Council meeting—consideration of a resolution to terminate Piazza for lack of confidence—also clearly identifies an emergency as defined by the legislature in section 3A(h).

In its brief, the City endeavors to explain how it was possible for the trial court to find that an emergency did in fact exist. We find it compelling that the City does not, in its explanation, use the words "lack of confidence," the very words in the Notice that it must argue clearly identify the emergency. Instead, the City states that "overwhelming evidence" establishes that the Council decided that *Piazza's acts* constituted an emergency requiring immediate action because the acts were clearly insubordinate and because "it was felt" that the acts could expose the City to liability. The City also states that it was "concerned about issues of liability and insubordination and determined that an emergency existed." Finally, the City indicates that "police misconduct" in a small community can place public safety in jeopardy.

The City obviously believes Piazza's insubordinate acts and their resulting exposure of the City to liability enable the fact finder to find that an emergency existed. Yet, the City could deal with its immediate concerns short of emergency termination, in a manner that also complies with the Open Meetings Act. The Notice did not indicate that Piazza had acted inappropriately or that the City had been exposed to liability. As a matter of law, the reason "lack of confidence" in a

police officer does not clearly identify a case of emergency or urgent public necessity as limited by section 3A(h). Accordingly, the City did not comply with the notice provisions of section 3A(h) authorizing a two-hour notice period and was required instead to post the Notice at least seventy-two hours in advance of the City Council meeting. We sustain the portion of Piazza's first point of error complaining that the trial court's Conclusion of Law 2(b) was erroneous.

The Texas Supreme Court has demanded exact and literal compliance with the Open Meetings Act. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990); *Smith County v. Thornton*, 726 S.W.2d 2, 2 (Tex.1986) (holding that section 3A(h) of Open Meetings Act requires literal compliance). "There is either formal consideration of a matter in compliance with the Open Meetings Act or an illegal meeting." *Acker*, 790 S.W.2d at 300. Actions taken by a governmental body at a meeting convened in violation of the Open Meetings Act are voidable. *See, e.g., Smith County*, 726 S.W.2d at 3; *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex.1975). Since we have concluded that a seventy-two hour notice period was warranted in the instant cause, we also conclude that the City Council meeting held after less than a three hour notice period was in violation of section 3A(h) of the Open Meetings Act. Any action taken at that meeting is thus invalid. *See id.; see also Ferris v. Texas Bd. of Chiropractic Examiners*, 808 S.W.2d 514, 518 (Tex.App.—Austin 1991, writ denied) (holding governing body's attempts to terminate employee at meetings held in violation of Open Meetings Act to be void as a matter of law). Consequently, the action taken to terminate Piazza did not effectively do so.

Piazza contends in his seventh and eighth points of error that the trial court erred by failing to grant him injunctive relief and to award him his attorney's fees and costs. We have previously held that an employee illegally terminated in violation of the Open Meetings Act is entitled to injunctive relief in the form of reinstatement, back pay, and benefits for the period of time between the illegal and legal terminations. *See Fer-*

*ris,* 808 S.W.2d at 519. In this cause, we have concluded that the action taken by the City Council to terminate Piazza was void because the City Council meeting was held in violation of the Open Meetings Act. As such, we conclude that Piazza is entitled to injunctive relief in the form of reinstatement, backpay, and benefits for the period of time following his illegal termination until reinstatement. *See id.* We also conclude that Piazza is entitled to an award of his attorney's fees and costs as authorized by the Open Meetings Act, Act of May 31, 1987, 70th Leg., R.S., ch. 549, § 4, 1987 Tex.Gen.Laws 2211, 2213 (Tex.Gov't Code Ann. § 551.142(b), since amended), and by the Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (West 1986).[5] *See also Ferris,* 808 S.W.2d at 519 (awarding attorney's fees and costs to employee purportedly terminated at meetings convened in violation of the Open Meetings Act). We sustain Piazza's seventh and eighth points of error. In light of our disposition, we need not reach the remaining points of error.

## CONCLUSION

In Conclusion of Law 2(b), the trial court concluded that a seventy-two hour notice period was not required before the City Council meeting convened. Because the Notice did not clearly identify an existing emergency, section 3A(h) of the Open Meetings Act required seventy-two hours' notice of the meeting. The City Council meeting, held after less than three hours' notice, thus violated the Open Meetings Act, and the action taken at that meeting to terminate Piazza is void. Accordingly, we reverse the trial court's take-nothing judgment and remand the cause to the trial court for rendition of judgment consistent with our opinion.

---

**5.** The uncontroverted evidence at trial conclusively established Piazza's entitlement to an attorney's fee award of $10,500 for trial and $7500 for the appeal to this Court.