The BENEDICTINE SISTERS OF THE GOOD SHEPHERD, Appellants,

v.

Bonnie L. ELLISON, Amy Ellison Marino, Karen E. Gerken & Thurman G. Ellison, Jr., Appellees.

No. 04–96–00631–CV.

Court of Appeals of Texas, San Antonio.

Oct. 15, 1997.

Rehearing Overruled Nov. 10, 1997.

Baldemar Garza, Garza & Montalvo, Rio Grande, for Appellant.

Jesus Maria Alvarez, Douglas M. Walla, Alvarez & Associates, P.C., Rio Grande City, for Appellee.

Before RICKHOFF, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

The Benedictine Sisters of the Good Shepherd (hereinafter "the Sisters") appeal from a takenothing judgment rendered in favor of appellees (hereinafter "the Ellisons") in a suit brought by the Sisters to establish an easement by necessity across the Ellisons' property. For the following reasons, we reverse and remand.

### FACTUAL BACKGROUND

The Sisters and the Ellisons own adjoining tracts of land located in Starr County, Texas. Record title to these tracts originates from a 1925 partition decree in which a 6807.8 acre plot, known as Porcion No. 75, of the former jurisdiction of Camargo, Mexico, was divided among its owners. One of the owners, The Texas Company (hereinafter "Texaco"), was awarded 115.87 acres, (tract 19), and Eva Marks Laborde was awarded 698.62 acres (tract 18). Importantly, the partition deed did not provide ingress and egress for the parties to their respective tracts. Farm to Market road 3167 (hereinafter "FM 3167"), which connects this ranching community, El Sauz, to Rio Grande City, lies to the east and northeast of tract 19, but there is no access to FM 3167 from tract 19. The Ellison property, tract 18, is located between tract 19 and FM 3167.

Thurman G. Ellison purchased tract 18 in 1954 from the First State Bank and Trust of Rio Grande City. The Ellisons are the successors-in-interest of tract 18. Evidently, Texaco never utilized its property and began leasing it to Ellison for cattle grazing in 1972.

During this time, Texaco and Ellison had an unwritten agreement allowing Texaco's ingress and egress onto its property. This arrangement continued for approximately fifteen to twenty years.

In 1993, Texaco gifted tract 19 to the Sisters. Upon acquiring the property, the Sisters began plans to build a monastery on the land and sought an easement from the Ellisons so they could access the land from FM 3167. Following a bench trial, a take-nothing judgment was entered against the Sisters. This appeal follows in which the Sisters contend that the evidence before the trial court established the elements of an easement by necessity.

### STANDARD OF REVIEW

■ Whether the Sisters are entitled to an easement by necessity is a question of law. We review a trial court's conclusions of law de novo. *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ). A conclusion of law will be reversed if it is erroneous as a matter of law. *Id.*

### EASEMENT BY NECESSITY

■ An easement by necessity is established with proof of (1) unity of ownership of the dominant and servient estates prior to severance, (2) necessity of a roadway, and (3) existence of the necessity at the time of the severance of the two estates. *Koonce v. Brite Estate,* 663 S.W.2d 451, 452 (Tex.1984); *Estate of Waggoner v. Gleghorn,* 378 S.W.2d 47, 48 (Tex.1964).

### 1. Unity of Ownership

■ To establish unity of ownership, the Sisters had to show that prior to severance, their grantor, Texaco, owned the dominant and servient estates as a unit or single tract. *See Koonce,* 663 S.W.2d at 452. The Ellisons claim the Sisters failed to establish unity of ownership because there is no evidence that Texaco owned the Ellisons' property. The Ellisons contend the evidence conclusively established that their tract was purchased from First State Bank and Trust of Rio Grande City, and that the two tracts were not unified at the time Texaco gifted the property to the Sisters, at the time the Elli-son property was purchased, or at the time of the 1925 partition.

■ It is undisputed that the Ellisons' land and the Sisters' land were carved out of the 6807.8 acre plot by a 1925 partition decree and that Texaco, the Sisters' grantor, acquired tract 19 pursuant to such partition. The partition decree indicates that the 6807.8 acre plot was one unit owned by more than a hundred individuals as tenants in common, including Texaco. As a tenant in common, Texaco owned an undivided interest in the whole. *See* BLACK'S LAW DICTIONARY 1314–15 (5th ed.1979). That is, Texaco owned an undivided interest in the entire 6807.8 acre plot, and thus had an ownership interest in the dominant and servient estates, albeit with numerous others, as a unit prior to severance. The Ellisons' contention that prior to partition each landowner treated his land as separate property has no bearing on the common ownership principal at work. Partition dissolves a tenancy in common, vesting in each owner a sole estate in a specific portion of land. *Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock,* 876 S.W.2d 377, 379 (Tex.App.—Austin 1994, no writ). Accordingly, despite the practices or understanding among the co-owners, each co-owner retained an interest in the whole prior to partition. The evidence therefore establishes the first element of unity of ownership.

### 2. Necessity of Roadway

■ Next, the Sisters had to show that the roadway sought was necessary to access their land and not for mere convenience. *See Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 643 (1958). The Sisters maintain that this element of proof is satisfied because they cannot access their property from a public road and the Ellisons' property is the only property adjacent to their property which has such access. Despite these facts, the Ellisons contend necessity is not established because there are at least two other landowners from whom the Sisters could obtain access to their land, and in fact, the record indicates that Victor Garcia allowed the Sisters to access their property through his land.

It is undisputed that the Sisters' property is landlocked. It is also undisputed that the Ellisons' property abuts only two sides of the Sisters' property, which theoretically allows for alternate routes for the Sisters to gain access to their land. The evidence, however, disproves the theory. The landowners to the south and west do not have access to a public road; the Ellisons are the only landowners adjacent to the Sisters with immediate access to FM 3167. Additionally, the evidence shows that Victor Garcia's wife, not Victor, owns the land over which the Sisters were allegedly granted permission to enter their property. Further, this property does not abut the Sisters' property. Thus, even if Victor could permit the Sisters to cross his wife's property, such passage would not give the Sisters access to their property. The evidence therefore establishes the necessity of a roadway because no public road provides a way of ingress or egress to the Sisters' property. *See Heard v. Roos*, 885 S.W.2d 592, 596 (Tex.App.—Corpus Christi 1994, no writ).

### 3. Existence of Necessity at Time of Severance

■ Finally, the Sisters had to establish that the necessity of the easement existed at the time of the severance of the dominant and servient estates. *Koonce*, 663 S.W.2d at 452. As noted, FM 3167 is the only public road which provides access to the Sisters' property. The existence of this road prior to the 1925 severance was established by the testimony of Julio Gutierrez. Gutierrez, born in 1911, testified that he first travelled on what is now FM 3167 in 1917 or 1918 to reach Rio Grande City from El Sauz. Improved only by the addition of pavement, the road remains the same. The evidence thus establishes that at the time of severance, tract 19 could not be accessed from a public road without an easement over tract 18.

Further evidence of necessity was provided by Joel Guerrero, who went onto the property at Texaco's request while Texaco still owned the land. Guerrero testified that an unwritten agreement existed between Texaco and the Ellisons giving Texaco access to its property by going across the Ellisons'

property. When Guerrero went onto the Texaco property, he first had to obtain the Ellisons' permission to cross their land.

■ We find that the foregoing evidence discharged the Sisters' burden in establishing their right to an easement by necessity. Our law recognizes that owners of landlocked property should not be deprived of the use, benefit, and enjoyment of their land. *See Alley v. Carleton*, 29 Tex. 74, 78–79 (1867); *Richter v. Hickman*, 243 S.W.2d 466, 468 (Tex.Civ.App.—Galveston 1951, no writ). When Porcion No. 75 was divided among its owners, and Texaco was awarded a landlocked tract 19, an easement by necessity arose. Accordingly, point of error number one is sustained. In light of our disposition of point of error number one, we do not reach the Sisters' remaining points of error. *See* Tex.R.App. P. 90(a).

The judgment of the trial is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.

DUNCAN, J., dissents with opinion.

DUNCAN, Justice, dissenting.

Because the record in this case does not contain any evidence that an easement was "necessary" at the time of the severance by partition in 1925—much less conclusive evidence of this essential element of the Sisters' cause of action—I must respectfully dissent to the majority's judgment reversing the trial court's judgment and rendering judgment in favor of the Sisters.

### PROCEDURAL BACKGROUND

At the Sisters' request, the trial court filed findings of fact and conclusions of law in support of its judgment. In its conclusions of law, the trial court ruled the Sisters had not carried their burden of proving that "the necessity existed at the time of the severance...." Although the Sisters requested additional and amended findings, they did not ask the court to find that Texaco did not have any legal access to Tract 19 at the time of the severance.

### NECESSITY AT THE TIME OF SEVERANCE

The Sisters seek an easement of necessity through an implied reservation in Texaco's conveyance of its undivided interest in Tract 18 to the Ellisons' predecessor in title. *See Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 167 (1952) (implied grant "in favor of parcel granted," while implied reservation "in favor of one remaining in ownership of grantor"). Therefore, the Sisters bore the burden of proving not only unity of ownership and present necessity but also "historical necessity," *i.e.,* an easement was necessary at the time of the severance. *Id.*; *see also Bains v. Parker,* 143 Tex. 57, 182 S.W.2d 397, 399 (1944). An easement of necessity through an implied reservation is necessary only when the claimant has no other legal access from his property to a public road. *Bains,* 182 S.W.2d at 399–400. Necessity is a mixed question of "law and fact and accordingly for the factfinder in the ordinary case." *Mitchell,* 246 S.W.2d at 168.

### STANDARD OF REVIEW

My first point of disagreement with the majority's opinion is its statement that "[w]hether the Sisters are entitled to an easement by necessity is a question of law," reviewable *de novo.*

As expressly stated in *Mitchell,* whether an easement is "necessary" is a mixed question of "law and fact and accordingly for the factfinder in the ordinary case." *Mitchell,* 246 S.W.2d at 168. Therefore, if a jury finding of necessity is not supported by any probative evidence, a judgment in the plaintiff's favor must be reversed and a judgment in favor of the defendant rendered, unless the interest of justice dictates a remand for a new trial. *Id.* at 169.

The fact finder in *Mitchell* was a jury, while the fact finder in this case was the trial court. However, this distinction does not affect the applicable standard of review for two reasons. First, a trial court's findings are governed by the same standards for sufficiency review as those that govern jury findings. *E.g., Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). Second, the erroneous designation of a finding of fact as a conclusion of law is not controlling on this court. *E.g., Ray v. Farmers State Bank,* 576 S.W.2d 607, 608 n. 1 (Tex.1979).

In this case, therefore, the trial court's conclusion that the Sisters failed to carry their burden of proving historical necessity should be treated as a finding of fact and subjected to the same sufficiency standards of review applied to jury findings. However, because the fact finder in this case concluded the Sisters did not carry their burden of proving historical necessity, unlike in *Mitchell,* the standards to be applied are those applicable to a jury's refusal to find an essential fact in favor of the party with the burden of proving that fact, *i.e.,* a "non-finding." *See generally,* W. Wendall Hall, *Revisiting Standards of Review in Civil Appeals,* 24 ST. MARY'S L.J. 1041, 1135–36, 1138–39 (1993).

In short, for the Sisters to obtain a reversal of the trial court's judgment, they must demonstrate that at least one of the trial court's "non-findings" is "so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust." *Id.* To obtain a rendition of judgment in their favor, the Sisters must demonstrate they proved each of the elements of their cause of action as a matter of law. *Id.*

### NECESSITY AT THE TIME OF SEVERANCE

My second point of disagreement with the majority's opinion is its statement that the Sisters met their burden of proving historical necessity because the undisputed evidence establishes that, at the time of the severance, "[T]ract 19 could not be accessed from a public road without an easement over [T]ract 18." This may well be true. But it is immaterial. The test, as set forth in *Bains,* is not whether the Sisters had access to their land from a public road but whether, at the time of the severance in 1925, Texaco had *any* legal and not merely permissive right "to pass over any of the surrounding tracts, whether by prescription, necessity, or otherwise...." *Bains,* 182 S.W.2d at 399; *see, e.g., Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 643 (1958); *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 626 (1950); *Payne v. Edmonson,* 712 S.W.2d 793, 796 (Tex.

**634**

App.—Houston [1st Dist.] 1986, writ ref'd
n.r.e.); *Ward v. Slavecek,* 466 S.W.2d 91, 92–
93 (Tex.Civ.App.—Waco 1971, no writ);
*Grobe v. Ottmers,* 224 S.W.2d 487, 488–89
(Tex.Civ.App.—San Antonio 1949, writ ref'd
n.r.e.); *see also Bickler v. Bickler,* 403
S.W.2d 354, 359 (Tex.1966) (explaining that
way of necessity denied in *Duff* and *Othen*
because plaintiffs had other legal access to
their property). And, as to this essential
element of their cause of action, the Sisters
introduced no evidence. There is, therefore,
no basis for reversing the trial court's judg-
ment, much less rendering judgment in favor
of the Sisters.

For these reasons, I would affirm the trial
court's judgment and must respectfully dis-
sent.