OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

August 28, 2001

The Honorable Tom Ramsay
Chair, Committee on County Affairs
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0406

Re: Creation of a fresh water supply district under chapter 53 of the Water Code (RQ-0359-JC)

Dear Representative Ramsay:

You have asked this office a series of questions concerning the creation of fresh water supply districts. We note at the outset that your concerns center around the creation of a particular district, Kaufman County Fresh Water Supply District No. 1, and that your ultimate question is whether that district was validly created.[1] This office does not find facts in the opinion process.[2] Accordingly, to the extent that factual findings would be necessary in order to determine whether the procedures mandated by chapter 53 of the Water Code governing the creation of a fresh water supply district had been properly followed in the instant case, we could not make such a determination in an attorney general opinion. Moreover, it has been suggested that section 42 of Senate Bill 1444, adopted by the Seventy-seventh Legislature, effectively moots your question.[3] Section 42 validates the creation and all proceedings related to the creation of a conservation and reclamation district created under article III, section 52 and article XVI, section 59 of the Texas Constitution such as the Kaufman County Fresh Water Supply District No. 1. See Act of May 26, 2001, 77th Leg., R.S., ch. 1423, 2001 Tex. Sess. Law Serv. WL TX LEGIS 1423 (2001). This validation does not apply to matters which were the subject of pending litigation on the effective date of Senate Bill 1444, nor to governmental acts or proceedings that were misdemeanors or felonies. See id.

---

[1]See Letter from Honorable Tom Ramsay, Chair, Committee on County Affairs, to Honorable John Cornyn, Texas Attorney General, at 1 (Feb. 21, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

[2]See, e.g., Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

[3]See Letter from Larry F. York, York, Keller & Field L.L.P., to Susan Gusky, Chair, Opinion Committee, at 6 (July 13, 2001) (on file with Opinion Committee).

It is a well-settled principle that validating statutes are to be liberally construed. *See, e.g., Perkins v. State,* 367 S.W.2d 140, 147 (Tex. 1963). "[T]he Legislature may validate a statute or act of a political subdivision so long as it originally had power to enact or authorize it." Tex. Att'y Gen. Op. No. H-1102 (1977). *See also Yoakum County Water Control and Improvement Dist. v. First State Bank,* 449 S.W.2d 775, 778 (Tex. 1969). No one has indicated to us, nor are we aware of any reason to believe that either of the circumstances which would render validation inapplicable has occurred here. Accordingly, unless litigation was pending when Senate Bill 1444 went into effect, or certain governmental acts were misdemeanors or felonies, it would appear that the legislature has validated the creation of this particular district. Nevertheless, for the purpose of offering such guidance as we can for the creation of future districts, we will endeavor to answer the purely legal questions involved and assume the facts as you have presented them to us as illustrations of more general principles.

You first ask whether a petition to create such a district is sufficient "if it is not signed by 50 or a majority of the electors of the proposed district who own land in the proposed district."[4] Section 53.014 of the Water Code, setting forth the requisites of a petition to set up a fresh water supply district, requires that such a petition contain "the signatures of 50 or a majority of the electors of the proposed district who own land in the proposed district." TEX. WATER CODE ANN. § 53.014(1) (Vernon 1972). Accordingly, under the plain language of the statute, a petition not signed by either fifty or a majority of the land-owning electors would appear to be insufficient.

However, a question has been raised as to the constitutionality of the requirement that the petitioners be property owners within the district on the ground that conditioning the right to petition on land ownership is as constitutionally suspect as conditioning suffrage on such a qualification. The Supreme Court of the United States has struck down property qualifications for suffrage in a variety of contexts. *See Kramer v. Union Free Sch. Dist.,* 395 U.S. 621 (1969) (property qualification in school board election violated Equal Protection Clause); *Cipriano v. City of Houma,* 395 U.S. 701 (1969) (striking town property qualification in municipal utility bond election); *City of Phoenix v. Kolodziejski,* 399 U.S. 204 (1970) (state may not restrict franchise in general obligation bond elections to real property taxpayers).

On the other hand, certain limitations on the franchise have been held to be permissible. In *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.,* 410 U.S. 719 (1973), the Court held that a provision of the California Water Code limiting the right to vote in water storage district general elections to landowners and apportioning such votes according to the land's assessed value did not violate the Equal Protection Clause of the Fourteenth Amendment. *See Salyer Land Co.,* 410 U.S. at 728. Writing for the majority, Justice Rehnquist concluded that "the appellee water storage district, by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group" was an exception to such cases as *Kramer, Cipriano,* and *City of Phoenix.*

---

[4]Request Letter, *supra* note 1, at 1 (quoting section 53.014 of the Water Code).

*Id.* Similarly, in *Ball v. James*, 451 U.S. 355 (1981) the Court upheld an Arizona statute limiting the franchise in elections for the directors of an agricultural improvement and power district to landowners, noting that the *Kramer* line of cases "do[es] not bear on the question of a special-purpose governmental entity." *Ball*, 451 U.S. at 366.

This office considered a somewhat related issue in Attorney General Opinion DM-484 (1998), in which the question was whether section 53.063 of the Water Code and the enabling act of the Brookshire-Katy Drainage District, which barred a person who did not own land in a fresh-water supply district from service on the district's governing body, violated the Equal Protection Clause. We were unable to answer that question because the key analytical issues, namely whether the district involved "has a special limited purpose and whether its activities disproportionately affect landowners," were issues requiring factual findings "which cannot be answered in the opinion process." Tex. Att'y Gen. Op. No. DM-484 (1998) at 1.

We note that the case law here is not perfectly on point, given that there is a distinction between suffrage and the right to petition. The petition, in this instance, initiates the process at the end of which the question of a right to vote would come into play. It might therefore be argued that the principle of "one person, one vote" is not in fact implicated here. However, presuming that a court were persuaded that these cases were indeed relevant, the same issues considered in DM-484 would arise in the context of section 53.014(1)'s requirement, and accordingly, while we must raise the question of the constitutionality of that requirement, we cannot answer it in an attorney general opinion.

Your second question is whether "a commissioners court has authority to approve a petition more than 30 days after the petition was presented."[5] As we understand it, the facts leading to this question are that a hearing was held by the Kaufman County Commissioners Court on December 18, 2000, on a petition for the creation of a freshwater supply district that had been submitted on November 22, 2000; that no action was taken by the court on December 18; that a "workshop" on the petition was held on January 2, 2001; and that the court approved the petition on January 8, 2001.[6]

Section 53.016 of the Water Code requires that a hearing on the petition for the creation of a fresh water supply district "must be held during the period beginning on the 15th day and ending with the 30th day after the day the petition is presented." Tex. Water Code Ann. § 53.016 (Vernon 1972). We note that, while the section directs when a hearing must be held, it does not by its terms require that action be taken on the day the hearing is set. Section 53.019 sets forth the powers of the commissioners court with respect to the hearing:

---

[5]Request Letter, *supra* note 1, at 1.

[6]Request Letter, *supra* note 1, at 2.

(a) The commissioners court shall have jurisdiction to determine all issues pertaining to the sufficiency of the petition and shall allow any interested person to appear before it in person or by attorney to offer testimony relative to the sufficiency of the petition.

(b) The commissioners court may adjourn the hearing from day to day as is necessary to complete the hearing.

(c) The commissioners court may make all orders necessary to determine the matters before it.

*Id.* § 53.019. In our view, section 53.019 gives the court a broad measure of discretion in conducting the hearing. Whether the situation you describe is an abuse of that discretion, and whether the court substantially complied with sections 53.016 and 53.019 in setting the hearings and workshop are again fact-based inquiries better addressed by a district court than by this office in the opinion process. *See, e.g.,* Tex. Att'y Gen. Op. No. JC-0282 (2000) at 4 (substantial compliance with notice requirement generally is question of fact beyond purview of attorney general opinion).

You next ask whether the temporary supervisors of the water supply district board, appointed by the commissioners court pursuant to section 53.020 of the Water Code, are empowered to call the election on creating the district.[7] As you point out, prior to the repeal of section 53.020 of the Water Code by the Seventy-fourth Legislature[8] and the replacement of that section by the Seventy-fifth Legislature,[9] the responsibility for calling the election lay with the commissioners court.[10] Further, the new version of section 53.020 does not explicitly vest the responsibility for calling the election in the temporary supervisors. A letter from the Elections Division of the Secretary of State takes the view that in this case "the political subdivision (*i.e.,* the Fresh Water Supply District) orders the election for its officers."[11]

The Secretary of State is the chief elections officer of the State of Texas. *See* TEX. ELEC. CODE ANN. 31.001(a) (Vernon Supp. 2001). "[S]o long as the Secretary of State's interpretation of

---

[7]*See* Request Letter, *supra* note 1, at 1, 5-7.

[8]*See* Act of May 25, 1995, 74th Leg., R.S., ch. 715, § 42, 1995 Tex. Gen. Laws 3755, 3803.

[9]*See* Act of May 30, 1997, 75th Leg., R.S., ch. 1070, § 26, 1997 Tex. Gen. Laws 4074, 4081.

[10]*See* Request Letter, *supra* note 1, at 5.

[11]Letter from Ann McGeehan, Director of Elections, Office of the Secretary of State, to Frank Van Court (June 27, 2000) (on file with Opinion Committee).

an [election law] provision is a reasonable one that does not do violence to the statutory language, this office will defer to it." Tex. Att'y Gen. Op. No. JC-0330 (2001) at 2. Section 3.004(b) of the Election Code, upon which the Secretary of State's decision was based, states: "If a law providing for an election *relating to the affairs of a political subdivision* does not designate the authority responsible for ordering the election, *the governing body of the political subdivision* shall order the election." TEX. ELEC. CODE ANN. § 3.004(b) (Vernon 1986) (emphasis added). The Secretary of State, as it appears, has taken the view that the governing body of the political subdivision in question is the temporary supervisors. You argue, on the other hand, that the water district does not yet exist, and that accordingly, the temporary supervisors have no such authority.[12] Whatever the relative merits of these positions, the view that the temporary supervisors constitute the governing body of the political subdivision is not an unreasonable interpretation of the language of section 3.004(b). The Secretary of State having determined that the temporary supervisors were empowered to call the election, this office will not gainsay that determination.

Your next questions concern whether certain actions taken by the temporary supervisors violated the Open Meetings Act.[13] Again, while we can discuss the purely legal requirements of the Open Meetings Act, we cannot determine in an attorney general opinion whether particular acts by a particular governmental body violated the Act. *Cf.* Tex. Att'y Gen. Op. No. JC-0282 (2000). We will assume *arguendo* the facts as you describe them for the purpose of elucidating the legal implications; but this assumption is in no sense, as we have previously noted, a factual finding.

Your questions concern two meetings held by the temporary supervisors, one on January 8, 2001, and one on January 12, 2001. Notice for both these meetings, as you inform us, was posted on January 8, 2001. At the meeting held on the 8th, an election was called for January 20th.[14]

As you correctly note, the Open Meetings Act, chapter 551, of the Government Code, requires that "[t]he notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting . . . ." TEX. GOV'T CODE ANN. § 551.043 (Vernon 1994). There is an exception to the seventy-two hour rule for "an emergency or when there is an urgent public necessity." *Id.* 551.045(a). "Emergency" is defined by the Act to mean "(1) an imminent threat to public health and safety; or (2) a reasonably unforeseeable situation." *Id.* § 551.045(b). Further, the governmental body must "clearly identify the emergency or urgent public necessity in the notice or supplemental notice under this section." *Id.* § 551.045(c). The mere recitation of the statutory language does not clearly identify the emergency or urgent public necessity; rather, "an emergency is clearly identified

---

[12]Request Letter, *supra* note 1, at 4.

[13]Request Letter, *supra* note 1, at 1.

[14]Request Letter, *supra* note 1, at 3.

when the *reason* for the emergency is stated in the notice." *Piazza v. City of Granger*, 909 S.W.2d 529, 553 (Tex. App.–Austin 1995, no writ) (emphasis added).

Further, there is "urgent public necessity" under the Act only if there is "(1) an imminent threat to public health and safety; or (2) a reasonably unforeseeable situation." TEX. GOV'T CODE ANN. § 551.045(b) (Vernon 1994). While the provision of fresh water is certainly of benefit to the public health, it would strain credulity to suppose that a meeting had to be called on a few hours notice to call for an election more than a week later to set up a fresh water supply district because failing to call such a meeting would result in an *imminent* threat. Nor can the reason for such a meeting be said to be reasonably unforeseeable when the meeting is called to take an action required by statute. *Cf. Piazza*, 909 S.W.2d at 533 (development of "lack of confidence" in police officer not unforeseeable given that statute provides it is a cause for termination). Taking the facts as you state them, then, we believe that a court would hold that the notice for the January 8 meeting did not state a valid reason for an emergency meeting under section 551.045 and that the situation prompting the call for an emergency meeting was not an emergency or matter of urgent public necessity under that section. Accordingly, the notice was inadequate to meet the requirements of the Open Meetings Act.

Notice on January 8 of a meeting called for January 12, however, is timely under section 551.043. You suggest that some action was taken at the January 12 meeting either to "ratify" or to take again the action taken at the January 8 meeting. A governmental body may not ratify an invalid act. *See Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646-47 (Tex. 1975). However, it may take the action again at a properly noticed meeting; the action will generally be effective from the date of the meeting which complied with the Open Meetings Act. *See Ferris v. Tex. Bd. of Chiropractic Exam'rs*, 808 S.W.2d 514, 518-19 (Tex. App.–Austin 1991, writ denied). We cannot determine, however, the invalidity of any particular action taken at the January 12 meeting for the reason we have already noted.

To reiterate in response to your final question, we cannot determine in the opinion process the validity of the creation of the fresh water supply district in question because of the necessity to make, in that regard, a myriad of factual determinations. Moreover, as we have noted, in the instant case the question would appear to be moot because of legislative action.

It has been suggested to this office that, had the issue remained a live one, the proper forum for such determinations would have been an election contest.[15] Pursuant to section 233.006 of the Election Code, a contest on a ballot measure must be filed "not later than the 30th day after the date the official result of the contested election is determined." TEX. ELEC. CODE ANN. § 233.006(b) (Vernon Supp. 2001). Accordingly, it has been argued, these matters were mooted because no such

---

[15]*See* Letter from David B. Brooks, Attorney, to the Honorable John Cornyn, Texas Attorney General (Apr. 26, 2001) (on file with Opinion Committee).

contest was filed.[16] We are not persuaded that these matters effectively became beyond all review on that account. For example, in *State ex rel. City of Weatherford v. Town of Hudson Oaks*, 610 S.W.2d 550 (Tex. Civ. App.–Eastland 1980, writ ref'd n.r.e.), the appellate court held that a quo warranto proceeding to declare a municipal incorporation invalid could be maintained despite the lapse of the thirty-day limit because such a proceeding was not an election contest. *See City of Weatherford*, 610 S.W. 2d at 550-51.

Nor are we persuaded by the argument that any open meeting issues in a matter such as this "can be properly asserted only in an election contest filed within 30 days."[17] In *Rivera v. City of Laredo*, 948 S.W.2d 787 (Tex. App.–San Antonio 1997, writ denied), the San Antonio appeals court was faced with a choice between "holding that the right to bring an action under the Open Meetings Act extends to all situations except those in which a public official's office can be challenged in a quo warranto proceeding or . . . holding that the only situation in which a public official's office can be challenged in an action other than a quo warranto proceeding is where a violation of the Open Meetings Act is asserted." *Rivera*, 948 S.W.2d at 791. It chose the second approach, opening certain matters to an essentially collateral attack, "recognizing the supreme importance placed on open government." *Id.*

We do not, therefore, agree that the questions presented here were foreclosed by the fact that no election contest was filed. However it would appear that such questions were mooted by the Seventy-seventh Legislature's passage of Senate Bill 1444.

---

[16]*See id.* at 1-2.

[17]*Id.* at 2-3.

## S U M M A R Y

Senate Bill 1444, enacted by the Seventy-seventh Legislature and effective June 17, 2001, validated the creation and all proceedings related to the creation of a conservation and reclamation district created under article III, section 52 or article XVI, section 59 of the Texas Constitution, such as the Kaufman County Fresh Water Supply District No. 1.

Pursuant to section 53.014 of the Water Code, a petition for the creation of a fresh water supply district must be signed by "50 or a majority of the electors of the proposed district who own land in the proposed district." TEX. WATER CODE ANN. § 53.014 (Vernon 1972). Whether the property-ownership requirement of section 53.014 violates the Equal Protection Clause of the United States Constitution may depend on whether such a district has a "special limited purpose" and whether its activities have a "disproportionate effect . . . on landowners as a group." *Sayler Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719, 728 (1973).

The Secretary of State, the state's chief election officer, has determined that an election for the creation of a fresh water supply district should be called by the temporary supervisors of that district. Because this is not an unreasonable interpretation of section 3.004(b) of the Election Code, the Office of the Attorney General will defer to it.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee