OPINION HEADING PER CUR 







                     NO. 12-03-00403-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


SANTA FE PETROLEUM, L.L.C., 
TEXTRON SOUTHWEST, L.L.C. AND 
SOUTHWEST LAND AND PIPELINE           §     APPEAL FROM THE 273RD
COMPANY, L.L.C.,
APPELLANTS

V.                                                                         §     JUDICIAL DISTRICT COURT OF


STAR CANYON CORPORATION,
APPELLEE                                                        §     SHELBY COUNTY, TEXAS





OPINION
            Appellants Santa Fe Petroleum, L.L.C., TexTron Southwest, L.L.C., and Southwest Land and
Pipeline Company, L.L.C. (collectively “Santa Fe”) appeal the trial court’s judgment, which awarded
a one percent overriding royalty interest in various Shelby County mineral leases to Star Canyon
Corporation, as well as money damages and attorney’s fees. Santa Fe raises six issues on appeal. 
We affirm.

Background
            Santa Fe hired Sam Embras to organize a mineral development program for it in the James
Lime Horizontal Gas Project in Shelby County (the “James Lime”). While seeking individuals to
assist with the land purchase, Embras contacted Kent Lambeth, who was the president of Star
Canyon. Embras, as agent of Santa Fe, agreed to pay Lambeth a five dollar bonus per acre
purchased, as well as a one percent overriding royalty for any large blocks of acreage that Santa Fe
could purchase.
            Based upon the agreement, Star Canyon procured over eight thousand acres of mineral
interests on behalf of Santa Fe in the James Lime. These mineral interests were transferred to Santa
Fe by virtue of three closings in March, April, and October 1999. 
            At the March closing, Lambeth was told by the attorney for Santa Fe that he should get his
overriding royalty interest in writing. On April 19, 1999, four days prior to the April closing,
Lambeth received, by facsimile, the following signed agreement from Tom Griffin, the president of
Santa Fe:
 
 
              April 19, 1999
 
Agreement
 
 
 
This agreement between Star Canyon Corporation, hereinafter referred to as “SCC” and Sante Fe
Petroleum, L.L.C. hereinafter referred to as “SFP” and TexTron Southwest, L.L.C. hereinafter referred
to as “TS” or any of their assigns or affiliates covering Federal Lease No. TXNM-89845 consisting
of approximately 772 net acres and the HBP leasehold covered by Lease numbers 25666, 17850,
17842, and fee leases consisting of approximately 4,556.70 net acres and NON-HBP Leasehold
covered by Lease numbers 71595 and 71596 consisting of approximately 3,621.29 net acres hereby
agree to the following:
 
              1.           SFP, by signing this agreement, acknowledges that SCC has received a commission
of Five Dollars ($5.00) per acre for the transaction covering lease number TXNM-89845 to close on or before April 23, 1999 and on the transaction covering the
above referenced HBP and NON-HBP acreage that was closed on March 19, 1999.
              2.           It is understood that SCC shall be given an assignment of a one percent (1%) ORRI
on any of the above referenced acreage to be delivered at the time a unit is formed
containing any of the referenced acreage and said assignment shall be effective as
of the date said unit was formed.
              3.           If the unit formed is not comprised one-hundred percent (100%) from the above
referenced leases, the ORRI will be proportionately reduced.
 
If this letter agreement accurately sets forth your understanding of our previous verbal agreement to
the subject matter hereof, please sign two copies of the letter in the space provided below and return
one of the same to the undersigned.
 
                            Sincerely,
                            /s/ Kent Lambeth
                            Star Canyon Corporation
                            /s/ Kent Lambeth_____
                            Kent Lambeth, President 
                            Santa Fe Petroleum, L.L.C.
                            /s/ Tom Griffin_______
                            Mr. Tom Griffin, President
 
            On April 23, 1999, Lambeth and Griffin met at Santa Fe’s Dallas office for the second
closing. There, Lambeth presented two originals and a copy of the aforementioned letter agreement
to Griffin for his signature. Griffin handed the originals of the agreement to Embras and instructed
him to destroy them. Embras did as Griffin asked and placed the shredded documents in the trash. 
The parties then proceeded with the second closing, which resulted in the transfer of the seven
hundred seventy-two net acres referenced in the agreement.
            On May 11, 1999, Lambeth sent Griffin a letter requesting that he honor the agreement to
transfer the one percent overriding royalty interest to Star Canyon. In May 2000, Star Canyon filed
a declaratory judgment action against Santa Fe for breach of the April 19, 1999 letter agreement. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.001–37.011 (Vernon 1997 & Supp. 2004). After a
bench trial, the one percent overriding royalty interest in the acreage described in the letter agreement
was awarded to Star Canyon along with $174,235.19 in money damages and $12,000.00 in attorney’s
fees. Santa Fe timely filed this appeal.

Standard of Review
            Our standard of review is limited in the instant case. When findings of fact are neither filed
nor requested following a bench trial, it is implied that the trial court made all findings necessary to
support its judgment, provided that (1) the necessary findings are raised by the pleadings and
supported by the evidence and (2) the decision can be sustained by any reasonable theory consistent
with the evidence and applicable law. See Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989);
Fair Deal Auto Sales v. Brantley, 24 S.W.3d 543, 546 (Tex. App.–Houston [1st Dist.] 2000, no
pet.). The appellant’s burden on appeal is to show that the judgment of the court below cannot be
sustained by any theory raised by the evidence. See Brantley, 24 S.W.3d at 546.
            The trial court's findings of fact, express or implied, after a bench trial are reviewable for
legal and factual sufficiency by the same standards applied in reviewing the evidence supporting a
jury's answer. See Hitzelberger v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex. App.–Waco
1997, writ denied). We review de novo a trial court's conclusions of law, whether express or
implied. See Benedictine Sisters of the Good Shepherd v. Ellison, 956 S.W.2d 629, 631 (Tex.
App.–San Antonio 1997, pet. denied). A conclusion of law will be set aside if it is erroneous as a
matter of law. Id.
Complaint by party not having burden of proof
            When the complaining party raises a “no-evidence” or “legally insufficient evidence” issue
challenging the legal sufficiency of the evidence to support a finding that favors the party who had
the burden of proof on that finding, we must overrule the challenge if, considering only the evidence
and inferences that support the finding in the light most favorable to the finding and disregarding
evidence and inferences to the contrary, any probative evidence supports it. See Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex.1993). If there is more than a scintilla of evidence to
support the finding, the no-evidence challenge fails. Id. When the evidence offered to prove a vital
fact is so weak as to do no more than create a mere surmise or suspicion of the fact's existence, the
evidence is no more than a scintilla and, in legal effect, is no evidence. Heldenfels Bros., Inc. v.
City of Corpus Christi, 832 S.W.2d 39, 41 (Tex.1992). A no-evidence issue can be sustained only
when the record reveals one of the following: (1) there is a complete absence of evidence of a vital
fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than
a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. See Juliette
Fowler Homes, Inc. v. Welch Assoc., Inc., 793 S.W.2d 660, 666 n. 9 (Tex.1990).
            In reviewing an “insufficient-evidence” issue challenging the factual sufficiency of the
evidence to support a finding that favors the party who had the burden of proof on that finding, the
reviewing court may set aside the finding only if a review of all the evidence, both for and against
the finding, demonstrates that the finding is clearly wrong and manifestly unjust. See Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex.1965). Reversal could occur because the finding was based on
weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is
overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff, Another Look
at "No Evidence" and "Insufficient Evidence," 69 TEX. L. REV. 515, 519 n. 11 (1991).
Complaint by party having burden of proof
            When the party who had the burden of proof on an issue in a bench trial complains about the
absence of a finding of fact by the court, we treat the absence of the finding as a refusal by the trial
court to find the fact from a preponderance of the evidence. See Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex.1989). If that party raises a “conclusive-evidence” or “matter-of-law” issue,
i.e., asserts that the evidence conclusively established the critical fact such that the finding was
established as a matter of law, we must first examine the record for evidence that supports the court's
refusal to find that fact, while ignoring all evidence to the contrary. See id.; Holley v. Watts, 629
S.W.2d 694, 696 (Tex.1982). If we find evidence that supports the court's refusal to find the fact,
the inquiry ends, and the issue will be sustained; but if we find no evidence to support the refusal,
then the entire record must be examined to determine if the contrary proposition is established as a
matter of law. See Sterner, 767 S.W.2d at 690. 
            When the party who had the burden of proof on an issue complains about the court's refusal
to find a fact in a “contrary to the great weight and preponderance of the evidence” issue, i.e., asserts
that the court's refusal to find the fact is contrary to the evidence, we must overrule the complaint
unless, considering all the evidence, the refusal is contrary to the great weight and preponderance
of the evidence. See Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex.1988). 
            When considering the factual sufficiency of the evidence, we do not weigh the evidence and
set the verdict aside merely because we believe that a different result is more reasonable. Dubree
v. Blackwell, 67 S.W.3d 286, 289 (Tex. App.–Amarillo 2001, no pet.) (citing Leyva v. Pacheco, 358
S.W.2d 547, 549 (1962)). The trial court, as the trier of fact, is the sole judge of the credibility of
the witnesses and weight to be given their testimony. Nordstrom v. Nordstrom, 965 S.W.2d 575, 580
(Tex. App.–Houston [1st Dist.] 1997, pet. denied). The trial court may take into consideration all
of the facts and surrounding circumstances in connection with the testimony of each witness and
accept or reject all or any part of that testimony. Id. Where enough evidence is before the fact finder
that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions
to be drawn from the evidence, we may not substitute our judgment for that of the fact finder. 
Dubree, 67 S.W.3d at 289.
 
Rescission
            In its first issue, Santa Fe contends that the trial court erred when it found the April 19 letter
agreement was a valid contract because the evidence conclusively showed that the parties had agreed
to rescind it. Santa Fe’s argument presupposes that there existed a valid contract in the first place. 
See, e.g., Humphrey v. Camelot Retirement Cmty., 893 S.W.2d 55, 59 (Tex.App.–Corpus Christi
1994, no writ) (rescission is an equitable remedy that operates to set aside a contract that is legally
valid).
            Parties may rescind their contract by mutual agreement and thereby discharge themselves
from their respective duties. Texas Gas Utilities Co. v. Barrett, 460 S.W.2d 409, 414 (Tex. 1970). 
It is a well established rule that the repudiation of a contract by one party rescinds the contract when
such repudiation is accepted by the other party. Gage v. Wimberley, 476 S.W.2d 724, 721 (Tex. Civ.
App.–Tyler 1972, writ ref’d n.r.e.). If the repudiation is not accepted by the other party, the contract
is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party,
remains subject to all obligations under the contract. See Griffith v. Porter, 817 S.W.2d 131, 135
(Tex. App.–Tyler 1991, no writ). We must therefore examine the evidence in the record before us
to determine if there was conclusive evidence that Lambeth, on behalf of Star Canyon, repudiated
the one percent override provision of the April 19 agreement.
            The evidence was undisputed that only Lambeth, Griffin, and Embras were present at the
April 23 closing. Each testified at trial that Embras destroyed the unsigned copies of the April 19
agreement after he was instructed by Griffin to do so. Embras testified that he had to leave the room
to take a phone call, but that Griffin and Lambeth remained in the conference room and that he could
not hear what Griffin and Lambeth were saying. 
            Griffin testified that he told Lambeth that “we won’t close this deal” if the one percent
override is part of it. Lambeth, on the other hand, stated that Griffin told him that he (Lambeth) 
“deserved something” and that he (Griffin) “would have to think about it.” Lambeth further testified
that he had the signed fascimile copy of the April 19 agreement, but did not know whether a
facsimile was valid in a court of law. He also testified that he knew the facsimile copy was better
than nothing, but did not know how good it was. Lambeth further stated that he proceeded with
closing believing that Griffin was prepared to further negotiate the one percent override issue with
him. 
            We iterate that the trial court is the sole judge of the credibility of the witnesses and the
weight to be given their testimony. Nordstrom, 965 S.W.2d at 580. Thus, we disagree with Santa
Fe’s contention that the evidence is conclusive that Griffin, on behalf of Santa Fe, repudiated the one
percent override provision in the April 19 agreement. The trial court as fact finder could have
reasonably concluded based on the evidence before it that Lambeth surmised he still had a one
percent overriding royalty interest as evidenced by the signed written agreement he possessed and,
further, that Griffin was prepared to continue negotiations with him at a later date concerning the one
percent overriding royalty interest. There was not conclusive evidence to demonstrate that Lambeth
accepted Griffin’s repudiation of the one percent override. Thus, we hold that the contract was not
rescinded. Santa Fe’s first issue is overruled.

Waiver
            In its second issue, Santa Fe contends that the evidence shows that Star Canyon waived any
rights it had to the one percent override under the April 19 letter agreement. Santa Fe argues that
the evidence was undisputed that Griffin stated at the April 23 closing that he would not close if Star
Canyon required the assignment of the one percent override. Moreover, Santa Fe states that when
confronted with Griffin’s refusal to close, Lambeth and Star Canyon had the option of either (1)
insisting that they be given the one percent override at the risk of losing the sale or (2) proceeding
with the closing and abandoning the one percent override. It is therefore apparent, Santa Fe
contends, that Star Canyon chose the latter course of action.
            Waiver is defined as an intentional relinquishment of a known right or intentional conduct
inconsistent with claiming that right. Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003). 
Waiver is largely a matter of intent, and for implied waiver to be found through a party’s actions,
intent must be clearly demonstrated by the surrounding facts and circumstances. Id. Waiver is
ordinarily a question of fact. Id. A party’s continuing performance after another party’s breach is
not a waiver of the right to recover damages due to the breach. Cal-Tex Lumber Co. v. Owens
Handle Company, 989 S.W.2d 802, 812 (Tex. App.–Tyler 1999, pet. denied). A party to a contract
has no duty to acknowledge or disavow a repudiation of a contract. See Barrett, 460 S.W.2d at 415. 
            The evidence of record reflects that Lambeth did not believe he only had the two options in
responding to Griffin’s repudiation of the one percent override. Lambeth testified that Griffin said
he was going to think about the one percent override and that Star Canyon deserved something. It
follows that Lambeth proceeded with the closing believing that Griffin was going to try to further
negotiate the one percent override with him. Therefore, we hold that the evidence of record supports
the trial court’s implied finding that there was no waiver on Star Canyon’s part. Santa Fe’s second
issue is overruled. 

Estoppel 
            In its third issue, Santa Fe contends that the evidence shows Star Canyon should be estopped
from claiming the one percent override. In support of its argument, Santa Fe urges that Lambeth
failed to insist that he receive the one percent override after Griffin instructed Embras to destroy the
letter agreement and, further, that Lambeth did not seek to enforce the previously-executed copy of
the letter agreement he possessed. Sante Fe thus contends that Lambeth’s conduct induced Griffin
to proceed with the closing. 
            To establish an equitable estoppel, Santa Fe was required to prove that Lambeth made (1)
a false representation or concealment of material facts, (2) with knowledge, actual or constructive,
of such facts, (3) with the intention that it should be acted on, (4) to a party without knowledge, or
the means of knowledge of those facts, (5) who detrimentally relied upon the misrepresentation. See
Schroeder v. Texas Ironworks, Inc., 813 S.W.2d 483, 489 (Tex. 1991). The burden of proving an
estoppel and the essential elements thereof rests on the party asserting it, and the failure to prove any
one or more of the elements is fatal. See Barfield v. Howard M. Smith Co., 426 S.W.2d 834, 838
(Tex. 1968). 
            There is no duty to acknowledge or disavow a repudiation of a contract. See Barrett, 460
S.W.2d at 415. There must be a clear acquiescence to accept the repudiation. See id. 
            In the case at hand, Santa Fe failed to demonstrate estoppel. The evidence does not support
that Griffin, as representative for Santa Fe, lacked knowledge or the means of knowledge that he had
executed a letter agreement giving Star Canyon a one percent overriding royalty interest. Griffin’s
signature appeared on the facsimile copy of the letter agreement possessed by Lambeth. Lambeth
had no duty to further negotiate with regard to the one percent override or urge the validity of the
previously-executed letter agreement that set forth Star Canyon’s entitlement thereto before closing. 
We hold that the evidence does not conclusively demonstrate that Star Canyon should be estopped
from receiving the one percent override. Santa Fe’s third issue is overruled. 

Ambiguity
            In its fourth issue, Santa Fe argues that the April 19 letter agreement was too ambiguous to
be enforced because it did not specify which party was required to give Star Canyon the assignment
of the one percent overriding royalty interest. Santa Fe further contends that the contract for the
conveyance of an overriding interest in an oil or gas property must be in writing to satisfy the statute
of frauds. 
            The question of whether a contract is ambiguous is one of law for the court. Heritage
Resources Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). If a contract is worded so that
it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the
court will construe the contract as a matter of law. Moore v. Lerma, 946 S.W.2d 90, 94 (Tex. App.–
El Paso 1997, pet. denied). We give terms their plain, ordinary, and generally accepted meaning
unless the instrument shows the parties used them in a technical or different sense. Heritage
Resources Inc., 939 S.W.2d at 121. We will enforce an unambiguous document as it is written.  
Id. 
            Here, the April 19 agreement specifically states that it is between Star Canyon and Santa Fe.


 
The agreement describes the properties that are the subject of the March, April, and October 1999
closings conducted by these two parties. The agreement demonstrates that these properties were to
be transferred to Santa Fe and its affiliates. The agreement specifically states that Star Canyon “shall
be given an assignment of one percent (1%) ORRI on any of the above acreage. . . .” Thus, it was
reasonable for the trial court to conclude that Santa Fe, as the only other party to the agreement,
would be making the assignment of the one percent override interest to Star Canyon. 
            We do not consider Santa Fe’s contention that the agreement violated the statute of frauds
inasmuch as this affirmative defense was not pleaded. A party waives his right to assert the statute
of frauds as a defense if he does not plead it. See Tex. R. Civ. P. 94; First Nat’l Bank in Dallas v.
Zimmerman, 442 S.W.2d 674, 677 (Tex. 1969). Therefore, Santa Fe has waived its reliance on such
a defense. Santa Fe’s fourth issue is overruled. 

Capacity of Parties
            In its fifth issue, Santa Fe contends that the trial court erred by entering judgment against
TexTron Southwest, L.L.C. and Southwest Land and Pipeline Company, L.L.C. In its brief, Star
Canyon replies that Santa Fe waived such a defense by failing to file a verified plea that there was
a defect of parties. We agree. Where a defendant does not file a sworn pleading complaining of a
defect of parties before the case is called to trial, such defect is waived. Sunbelt Constr. Corp. v.
S&D Mech., 668 S.W.2d 415, 418 (Tex. App.–Corpus Christi 1983, writ ref’d n.r.e.); see Tex. R.
Civ. P. 93(2),(4), (7).
            Further, even if Santa Fe had not waived the issue, the outcome would not differ. The April
19 letter agreement specifically stated that TexTron was a party to the agreement along with Santa
Fe. Documents involving the mineral interests in all three closings showed TexTron and Southwest
as owning interests therein and are part of the record before us. The record further reflects that these
three companies are affiliated and intertwined. Santa Fe’s fifth issue is overruled.

Attorney’s Fees
            In its sixth issue, Santa Fe argues that, assuming the trial court erred in finding the letter
agreement to be binding and enforceable, it also erred in awarding $12,000.00 in attorney’s fees to
Star Canyon. Since we have held that the trial court did not err as Santa Fe presupposes in this issue,
it follows that the trial court did not err in awarding attorney’s fees.
            Whether to award attorney’s fees in an action seeking a declaratory judgment is a matter
within the trial court’s sound discretion See Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). 
In reviewing a challenge to a trial court’s award of attorney’s fees under the Declaratory Judgments
Act, the court of appeals will determine that the trial court abused its discretion when there is
insufficient evidence that the fees were reasonable and necessary or when the award was inequitable
or unjust as a matter of law. Id. at 21.
            In the instant case, Star Canyon filed suit seeking a declaratory judgment and asking the trial
court to award it reasonable and necessary attorney’s fees as allowed by statute. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). There is evidence to support that the attorney’s
fees awarded to Star Canyon complied with Section 37.009. Nothing in our review of the record
causes us to conclude that the award was either inequitable or unjust. Thomas R. McLeroy, Jr., Star
Canyon’s attorney, testified to his qualifications and experience as an attorney licensed to practice
in and by the State of Texas. McLeroy further testified that he was familiar with the fees normally
charged by attorneys in the area for matters of the nature and complexity of the instant case. 
McLeroy stated that he had expended eighty hours in the prosecution of this suit and that his hourly
rate was $150.00 an hour, bringing the total fee to approximately $12,000.00. We hold that the trial
court did not abuse its discretion in awarding $12,000.00 in attorney’s fees to Star Canyon. Santa
Fe’s sixth issue is overruled.
 

 
Disposition
            Having overruled Santa Fe’s issues one, two, three, four, five, and six, we affirm the trial
court’s judgment.


                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice



Opinion delivered December 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.





(PUBLISH)